[Civ. No. 6233.  First Appellate District, Division One.—March 16, 1928.]

JOHN   MADIGAN,   Respondent,   v.   O.   A.   HALE   & COMPANY, Appellant.

Barry J. Colding, Theodore Hale, Wm. M. Abbott, K. W. Cannon and Enid Childs for Appellant.

Louis Oneal, Wm. F. James and S. F. Holstein for Respondent.

PARKER, J., *pro tem.*—This is an appeal by defendant from a judgment in favor of plaintiff entered pursuant to the verdict of a jury. The action was to recover damages on account of personal injury alleged to have been sustained through the negligence of defendant. A statement of the case follows.

The plaintiff at the date of the injury was a salesman engaged in the delivery of nine cases of groceries to the defendant company. The latter operates a large store in the city of San Jose. The goods sold are not manufactured on the premises, but the business conducted is that of retailing merchandise delivered to the said company. For the purpose of receiving such goods the defendant has provided, among other facilities, a delivery chute opening on the sidewalk and descending to the basement. This opening to the basement was equipped with sidewalk doors, which are lowered flush with the sidewalk when not in use, and when raised form a barrier to protect pedestrians. The easterly side of this opening to the basement of the store was approximately two feet from the street curb, and from this easterly side of the opening a wooden chute, almost five feet wide, ran from the level of the sidewalk to the receiving room in the basement. At the side of the chute a perpendicular iron ladder descended halfway. The remaining half of the descent to the basement is provided with an inclined wooden runway about five or six feet long and one and one-half feet wide, the completed arrangement comprising the iron ladder and wooden incline in one continuous structure from the sidewalk to the floor of the basement. The wooden part was inclined at an angle of fifty or sixty degrees and had wooden cleats nailed thereon, approximately a foot apart.

On the day of the accident two cleats were missing from the bottom of the incline.

This description of the premises involved seems agreed upon by all parties.

The facts connected with the accident were in dispute, and the question of the sufficiency of the evidence is not presented as an independent question. As the contentions of appellant, however, center about the facts of the case, it will be necessary to further narrate them; but in this narration we take the facts as outlined in the evidence of plaintiff, and where these are substantially supported we ignore any conflict. Further, in reviewing the facts we adopt as true those most favorable to the conclusion reached in the court below when substantial evidence supports them.

On the morning of the accident, at about the hour of 9 A. M. and shortly before the store proper was opened to the public, plaintiff arrived at the chute with nine cases of merchandise, each case being of a weight of fifty pounds. After he had sent the goods to the basement, down the delivery chute, the plaintiff started down the little way beside the main chute. After getting over the iron ladder he reached the wooden incline, in going down which he slipped and sustained the injuries complained of.

This statement of facts suffices to present the first point of appellant. However, as this point is discussed further facts will be developed.

■ The appellant contends that plaintiff was at all times a mere licensee upon the premises, to whom no duty was owed other than to avoid doing any wanton or wilful injury to him.

We cannot uphold this contention. The defendant is engaged, as stated, in the retailing of general mechandise, including groceries. Manifestly no business could be done by the retailer without goods to sell; and that they may be sold at retail it is necessary that a stock be carried on the premises. To effect this a delivery is essential, and it is a matter of common knowledge that every business establishment does maintain, apart from the store itself, certain designated delivery stations. The chute in question was the place provided for such deliveries. At the foot of this chute a shipping clerk was stationed who was in charge of a department for the receipt of goods, his receiving window

facing the chute. Freight, express, parcel post, groceries, and everything came down the chute, and all of the salesmen likewise came down the runway. It was the constant practice of the salesmen to enter that way, although some deliveries of small packages or rush orders carried in by boys on bicycles went directly to the store entrance. As a part of the usual delivery by salesmen it was the custom for the salesmen to enter the basement and arrange the goods delivered and place the same on shelves provided for that purpose. The plaintiff had been delivering goods to appellant for about six weeks before the day of the accident. This he did twice a week during that period, and he made the deliveries and came down the incline in the same way each time. Appellant's employees saw him making these deliveries and using the runway each time, and no one ever told him to do otherwise. The first time plaintiff made a delivery he was told by an employee of appellant to come down the runway.

This narrative is taken from the transcript of the testimony presented in the trial court and follows the language there used. The law governing destroys appellant's contention.

In the case of *Grant* v. *Sunset Telephone Co.*, 7 Cal. App., at p. 273 [94 Pac. 368], the court cites many authorities on the subject.

In *Sweeny* v. *Old Colony etc. R. R. Co.*, 10 Allen (Mass.), 368 [87 Am. Dec. 644], the supreme court of Massachusetts says: "The general rule or principle applicable to this class of cases is that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement or inducement, either express or implied, by which they have been led to enter thereon. The gist of the liability consists in the fact that the person injured did not act merely for his own convenience or pleasure and from motives to which no act or sign of the occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the

way or place was adapted and prepared or allowed to be used.''

Likewise the other authorities reviewed in the case of *Grant* v. *Telephone Co., supra*.

In *Benson* v. *Baltimore Traction Co.,* 77. Md. 535 [39 Am. St. Rep. 436, 20 L. R. A. 714, 26 Atl. 973], it is said: ''The distinction between an invitation and a license to go upon the premises of another appears to be that the former is inferred where there is a common interest or mutual advantage, while the latter is inferred only where the object is the mere pleasure or benefit of the person using it.''

The law of California accepts these principles as operative in this jurisdiction (19 Cal. Jur., pp. 617–621). While it is true that in many cases the facts have been so found as to cause, in some instances, a seeming deviation from the rule, yet the principles have remained unchanged.

Applying the law to the particular facts as here developed we conclude that plaintiff at the time of the accident was upon the premises not as a trespasser or a mere naked licensee, but was there upon an invitation implied if not positively expressed, and that as such invitee the defendant company owed to him the duty of maintaining the property in a safe condition and of exercising reasonable care in protecting the invitee from injury when properly making use of the premises.

Appellant then contends that if it should be held that plaintiff was. an invitee, defendant under the evidence was guilty of no negligence and that plaintiff was injured by an obvious defect.

It is conceded throughout the case by both appellant and respondent that the accident was caused by the absence of cleats on the wooden incline leading from the end of the iron ladder to the basement floor. The absence of these cleats was not a matter of faulty construction but was a case of neglect to repair. Originally the incline was provided with cleats, and as these cleats became loosened or removed the same were tightened or replaced. The morning was a rainy, wet morning, and the rain had poured into the chute opening. Plaintiff observed this before sending the goods down and before going down himself. The remainder of the testimony by plaintiff is extremely uncertain and contradictory. In many instances the testimony given on direct

examination seems to be directly contradicted by this same witness on cross-examination, and then on redirect examination the original testimony is repeated. This presents a matter for the jury's determination as to where the truth may be. The evidence supports these facts, viz., The entire chute, from sidewalk to basement floor, was not visible, and while the top portion where the iron ladder was would indicate a wet and slippery condition, the full length of the runway could not be seen. The cleats on the wooden incline were often loose or missing, and were under the control and inspection of the defendant. There is no evidence that the wooden incline was wet or slippery on the day in question. The plaintiff first noticed that the cleats were missing after he fell.

Appellant here argues that in his various deliveries covering a period of six weeks plaintiff must have become aware of the conditions existing, including the fact of the absence of the cleats. This, of course, is purely argumentative; and while a strong inference of knowledge might follow from such a user, yet the record discloses repairs from time to time. Likewise it is true that very often where no injury results from use of a thing it is taken for granted that it is safe. The plaintiff testified further that after the accident he noticed that a cleat was missing about ten inches from the bottom, and also that there were less cleats there on this day than had been there before. The plaintiff slipped and fell at the point where the cleat was gone. On his previous use of the chute and incline he had used all of the cleats and had relied upon them for a safe entry as would appear from his statement that he did not know that he could go down the runway without using all of the cleats that were formerly there. Appellant stresses the fact that plaintiff testified that the entry looked dangerous to him by reason of its slippery condition due to the rain, but nevertheless assumed the risk of going down. A sufficient answer is that it is not shown that the apparent danger, to wit, the slippery condition, caused or contributed to the accident. Sufficient appears in the record to indicate that the absence of the cleat alone was the cause of his fall and injury. A realization of the slippery condition of the runway in no way embraced knowledge that any cleats were missing; and conceding that the runway was slippery and that such condition was obvious,

yet the assurance of properly spaced cleats would minimize any danger to be expected from the slippery condition. Ordinarily any smooth inclined wooden surface is more or less slippery, and the function of cleats is to overcome this condition.

Appellant also urges that it was the slippery condition of the runway that caused the fall and not the absence of the cleat. This was a matter for the jury to determine from all the facts and circumstances, and there was direct evidence to the effect that plaintiff fell just at the point where there was no cleat, and that was the point where he slipped, and that he did not slip on the runway.

In addition to the foregoing there is evidence to support the conclusion that those in the employ of defendant in charge of that particular department knew of the condition of the runway, and that others had fallen at that place with no serious results. The record further supports the inference that this particular runway served as a sort of entertainment for the basement employees, the cares of the day being somewhat lightened and the tedium of toil relieved by observation of the incongruous manner of descent of other salesmen who reckoned on a cleat that was not. It may be further noted that there is no evidence to indicate that the runway at the place of the accident or elsewhere on the wooden part was actually wet or slippery, and therefore the fact that plaintiff might have thought it was so would have no bearing on his conduct.

As a corollary to appellant's contention as to the obvious character of the defect and the assumption of the risk it urges the contributory negligence of plaintiff. Practically the same argument is used on this branch of the appeal.

Conceding that if plaintiff had carefully looked he might have seen the defect or the lack of the cleats, he was under the circumstances justified in assuming the place to be one of safety, and hence his failure to observe the exact condition was not negligence on his part. (*Brinkworth* v. *Sam Seelig Co.*, 51 Cal. App. 668 [197 Pac. 427].)

Summarizing all of the facts we find that plaintiff was on the premises as an invitee; that the premises were maintained in a defective and dangerous condition, known to the defendant through its employees and servants; that the defect was not obvious, but on the contrary was unknown to

the plaintiff, and that plaintiff's injuries were caused by this defective construction and maintenance of the means of entrance which he was invited to use. These facts find ample support in the record, and remain unimpaired by the apparent conflict and such inconsistencies as cross-examination may have disclosed. No specific act of negligence on the part of plaintiff has been pointed out other than an argumentative dissertation on inferences to be drawn. Therefore, as far as the points heretofore discussed affect the merits of the appeal we can see no good reason to disturb the verdict.

■ Appellant next presents for our consideration a number of instructions, some given and some which the trial court refused to give. We will take up these in the order presented.

The first instruction claimed to be erroneous is as follows: "The court instructs you that where one maintains an entry or passageway into his place of business, which by reason of the arrangement of his premises and the use made by others with his knowledge would reasonably induce one of common understanding to believe that the use made by him thereof was in accordance with the intention and design of the one maintaining the same, such person so using it is presumed by law to be doing so on the invitation of the owner, and the latter is charged with the duty of maintaining such entry or passageway in a safe condition, and a failure to do so on his part is negligence."

The specific objection of appellant to this instruction is thus given: "This instruction made defendant an insurer. By the charge, mere proof of injury was made proof of negligence, for if the entry was not kept 'safe' defendant was negligent. It was immaterial, under this instruction, whether defendant exercised ordinary care, whether plaintiff knew of the danger, whether the danger was obvious, or the place was reasonably safe, or the defendant notified of the alleged defect or of the danger."

The argument is not convincing. We cannot read into the instruction all that appellant contends that it contains. The questions of plaintiff's knowledge, or of the nature of the defect with reference to its being obvious, do not bear on defendant's duty in the abstract. If plaintiff has a knowledge of the defect, or if the same is obvious, these facts may go to

affect plaintiff's right of recovery and to that extent limit the liability of defendant but in no sense would they operate to change the duty of defendant in the premises. Further, the instruction was a preliminary one, merely attempting to outline the general duty of defendant without reference to any question of liability. It is the duty of the owner of the premises, in the situation outlined in the instruction, to maintain the entry or passageway in a safe condition. If defects arise without his knowledge, or whether defendant could in the exercise of ordinary care have observed the defects, the duty of defendant is not altered, but these facts have probative value in determining whether or not the duty has been fulfilled, and this question depends upon the facts of each particular case.

In *Corbett* v. *Spanos,* 37 Cal. App. 202 [173 Pac. 770], the court quotes from the earlier case of *Schmidt* v. *Bauer,* 80 Cal. 565 [5 L. R. A. 580, 22 Pac. 256], as follows: "The keeper of a public place of business is bound to keep his premises and the passageways to and from it in safe condition, and use ordinary care to avoid accidents or injury to those properly entering upon his premises for business."

Appellant continuing further his attack upon this particular instruction, asserts that the instruction presumed plaintiff to be an invitee. By forced construction various meanings are attributed to detached phrases, and argument builded thereon. To follow each contention would be to present a treatise of mixed reasoning, misapplied law and erroneous conclusion. We see nothing prejudicial in the instruction as given, and this particularly in view of the charge as a whole.

Next it is claimed that the trial court erroneously charged the jury that plaintiff could recover upon issues not pleaded.

The complaint charged that defendant "had negligently failed to cause to be nailed or fixed any cleats on the lower part of said runway, and that plaintiff by reason of the negligence and carelessness of the defendant company in failing to provide the lower part of said runway with cleats slipped and fell." The trial court charged the jury as follows: "That the inclined runway so provided by defendant had nailed across it certain cleats to prevent slipping thereon; and the negligence which plaintiff charges against

defendant consists in its failure to maintain such cleats along the said runway, along the lower part of the same." Also: "Such person so using it is presumed by law to be doing so on invitation of the owner, and the latter is charged with the duty of maintaining such entry or passageway in a safe condition." Also: "The court instructs you that it is the duty of one maintaining such a passageway to maintain it in a reasonably safe condition." Also: "You are instructed that one lawfully using an entry way under such conditions is entitled to rely upon the presumption that it will be maintained in a proper and safe way." "The court instructs you that any damages sustained by one lawfully using such an entry or passageway which may have been incurred by injuries received by him as the direct and proximate result of any negligence on the part of the party in the maintenance of such entry or passageway may be recovered by the injured party."

Appellant argues that the issues involved cleats, and the instructions commanded a "safe" entry and passageway as a whole. And further it is contended that the jury were authorized to conjecture, after the event, as to what precautions would have been proper or what precautions would have made the entire entry or passageway (not the incline) safe. The instructions, it is claimed, authorized recovery on any ground.

The single issue at the trial concerned the runway and the missing cleats. All of the evidence was addressed to this particular claim of negligence. There was no suggestion of any other defect in construction or maintenance.

The case of *Kelley* v. *Hodge Transportation System,* 197 Cal. 607 [242 Pac. 79], is in point. The trial court in that case instructed the jury that "if they should find from the evidence in the case that defendant at the time and place of the collision violated any of the provisions of the state Motor Vehicle Act, then it is your duty to find that defendant was guilty of negligence." The portion of the instruction objected to contained the words, "violated *any* of the provisions of the state Motor Vehicle Act," and it was argued that the words within the quotation marks were not limited to those violations of the Motor Vehicle Act (Stats. 1915, p. 397, as amended by Stats. 1917, p. 382, Stats. 1919, p. 191), upon which respondent relied as to the cause of

her injuries. It was insisted that by the instruction as given the jury was told that *any* violation of the Motor Vehicle Act, whether or not it had any causative relation to the injuries inflicted, might be considered as a material element in the determination of the question of liability. The Supreme Court in passing upon this contention said: "It is scarcely conceivable that the jury should have been thus misled. Practically the only question in the case was whether or not the driver of the truck was guilty of negligence by continuing his course from one side to the other in face of the admitted fact that he saw Fisher at some distance prior to the collision, and knew or ought to have known that he would soon be in his path, without giving an alarm of any kind. But if it may be said that appellant suffered prejudice by the criticised instruction standing alone, the prejudice was removed by the giving of other instructions. The jury could not have been misled into the realm of surmises as to other violations of the Motor Vehicle Act inasmuch as none other was claimed to have occurred."

So here the jury were specifically instructed as to the issues, and these criticised instructions merely placed before them the general duties of the owner of premises upon which one had been invited. Before the owner owed plaintiff the specific duty of causing the cleat to be nailed or fixed there must rest upon said owner some general duty to maintain the premises in safe condition. Putting it differently, if appellant was not obligated to keep the premises and passageway in a safe condition, and owed no general duty whatsoever, then there would be nothing upon which to predicate a claim of negligence in failing to fix or nail any cleats on the runway.

Lastly, appellant contends that the trial court erred in refusing defendant's proposed instructions concerning contributory negligence and in misdirecting the jury on the subject.

Appellant presents four separate instructions requested by it and refused. We have, however, examined the instructions given, and find that every correct principle of law contained in the refused instructions was covered by instructions given. As a matter both of fact and of law the jury were better advised and the rights of appellant better preserved in the instructions given than would have

been the case had the charge contained the refused instructions and omitted those given.  This ends further discussion.

■ Instructions which were given and to which appellant directs its complaint are as follows: ''You are instructed that one lawfully using an entry or passageway under such conditions is entitled to rely upon the presumption that it will be maintained in a proper and safe condition; and he is not required to use any extraordinary degree of care or circumspection in endeavoring to ascertain whether or not such entry or passageway is safe.''

In view of the fact that appellant has presented us with an almost wholly italicized brief, and his contention being that the entire trial from beginning to end was a continuing error, we might expect to find in the brief or in an appendix or supplement thereto some reference that would indicate what preceded this particular instruction explanatory of the words therein ''under such conditions.''  Finding nothing so indicative we could disregard the point entirely and assume that the conditions upon which the use was made justified the instruction.  However, we have again gone to the transcript, and find that the instructions immediately preceding this went into a detail of the entire subject matter of the duties owing to an invitee by the owner of premises.  The law on the subject was fully and clearly expounded, and this instruction, coming as it did after the others, merely in effect followed the doctrine of the case of *Brinkworth* v. *Seelig Co.*, 51 Cal. App. 669 [197 Pac. 427] to the effect that an invitee is justified in assuming the place to be one of safety.  Further it might be added that throughout the law of negligence we find the standard to be ordinary care and circumspection under the existing circumstances, and that extraordinary care is not required.

■ Complaint is made of this instruction: ''The court instructs the jury that any damages sustained by one lawfully using such entry or passageway, which may have been incurred through injuries received by him as the direct and proximate result of any negligence on the part of the party in the maintenance of such entry or passageway may be recovered by the injured party from the one so negligent in the absence of any pleaded or proven contributory negligence.''

The claimed error therein is in the concluding clause. First it is contended that this clause assumed the absence of

any pleaded or proven negligence. The phrase "in the absence of," as here used, meant "if there is not," and to construe it differently would be to distort the meaning thereof as obviously intended. The instruction is, however, subject to the criticism that it might be inferred therefrom that contributory negligence must be pleaded or proven by the defendant. Yet this was of slight importance for the reason that other instructions explained that if the jury believed from the evidence that plaintiff's own negligence had contributed to the injury he could not recover. The instruction, it is true, might be so construed as to entirely eliminate such contributory negligence as might be shown from the testimony of plaintiff himself or that of his witnesses, or which might appear as a matter of law in the absence of an affirmative showing by defendant.

The jury were instructed that if it was found from a consideration of all the evidence in the case that such evidence was as consistent with a neglect of care on the part of plaintiff as with any alleged neglect of care on the part of defendant, then plaintiff could not recover; and, further the jury were told that plaintiff was bound to use the same degree of care to prevent injury to himself as defendant was to prevent injury to him, and if plaintiff failed to use such care, and his failure in this regard caused his injury, then he could not recover.

In the early case of *Brooks* v. *Crosby*, 22 Cal. 50, decided in 1863, Chief Justice Cope uses this language: "We are of the opinion that the case was fairly submitted to the jury and that the record discloses no error for which the judgment should be reversed. It is possible that instructions were refused which could properly have been given, and that some of those given are subject to verbal criticism. On the whole, however, we think there is no substantial ground of objection, as the question for the jury was a very simple one and depended entirely upon the weight of the evidence." This seems peculiarly fitting here. The issue was simple, and little testimony was adduced. In fact defendant put in hardly any evidence at all. The instructions as a whole were clear and full. There is hardly a trial of any issue but that a hypercritical analysis might somewhere disclose an error. But our organic law requires that in addition to the discovery of error there must also be at least some

good reason to believe that from such error a miscarriage of justice has resulted.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 14, 1928.

All the Justices present concurred.