[Civ. No. 4622. Third Appellate District.—December 8, 1932.]

L. A. BUCKINGHAM, Respondent, v. SAN JOAQUIN COTTON OIL COMPANY (a Corporation), Appellant.

Daniel W. Burbank, Pembroke Gochnauer, John J. Taheny and Barcroft & Barcroft for Appellant.

Conley, Conley & Conley, Wakefield & Hansen and William C. Crossland for Respondent.

THE COURT.—This action was brought by plaintiff against defendant for damages for injuries sustained by him through the alleged negligence of defendant.

The action was tried by a jury which rendered its verdict in favor of the plaintiff. Defendant moved for a new trial, and the motion therefor being denied, judgment was rendered for plaintiff and from this judgment defendant has appealed.

Appellant owned and operated a cottonseed-oil mill. The cottonseed was hauled to appellant's yard in automobile trucks, and after the same was weighed by an employee of appellant, the truck containing the cottonseed was driven to and unloaded into a long trough referred to as the screw conveyor. This screw conveyor was ninety feet long and con-

tained a screw sixteen inches in diameter and extended throughout the length of the conveyor. The rotary action of the screw propelled and conveyed the cottonseed along the trough to appellant's mill. The screw was operated by an electric motor. The switch buttons for starting and stopping it were located in the mill building some distance from the unloading point. Iron bars were placed across the top of the trough of the conveyor sixteen inches in length, five-eighths of an inch in thickness, and were spaced four and one-fourth inches apart from center to center.

The method used in unloading the truck was as follows: The loaded truck was driven along the side of the conveyor and a trap-door twelve feet long and two feet wide was let down and over this trap-door the seed was shoveled into the conveyor. The seed frequently became clogged on the bars over the conveyor, and it was then necessary, in order to finish the unloading, that this seed should be agitated and fed through the bars so that the auger would propel it forward. As to the manner in which this could be done there is a decided conflict in the evidence.

Witnesses for appellant testified that the clogging seed could be agitated and removed from the bars by means of a long-handled fork, and that there was no necessity of getting on top of the conveyor to do this. On the other hand, witnesses for respondent testified that it was impossible to remove the clogging seed without getting on top of the conveyor and using the hands or feet to dislodge it.

On February 3, 1930, the date of the accident, respondent, operating a truck loaded with cottonseed, drove into appellant's yard and had the seed weighed and then in the customary manner drove to the conveyor and proceeded with the unloading of the cottonseed. After dropping the trap-door preparatory to unloading he observed that the conveyor was clogged and would not carry forward the seed he was about to unload, that under this condition it became necessary for him to get on the conveyor for the purpose of removing the clogging seed. This he proceeded to do and after removing the obstructing seed he retraced his steps along the top of the conveyor and as he was in the act of stepping from the top of the conveyor to the truck his feet slipped between the iron bars and came in contact with the said screw, resulting in the loss of one foot and

serious injury to the other before the motor could be stopped.

At the time of the accident respondent was a truck driver in the employment of J. S. Fry and in the course of his employment had delivered about six truckloads of seed to the mill of appellant. He testified that the clogging of the seed in the conveyor was of frequent occurrence and that when it could not be reached with the fork the only way in which it could be removed was by getting on the conveyor. It appears that the obstructing seed could not be removed while standing upon the ground. The top of the conveyor was some forty-two inches above the ground and its construction was such that one standing on the ground could not clean it. Witnesses for appellant testified that the obstructing seed could be removed by the truckman, by means of a fork, while standing on the truck. On the other hand, witnesses for respondent testified that the only way in which the conveyor could be cleaned, except in the immediate vicinity of the truck, was by getting on the conveyor, that it was impossible to otherwise remove the obstructing seed, that this was the usual and customary way of removing the clogging seed while unloading, and that this necessity for getting on the conveyor was continually occurring.

Appellant claims that while respondent was an invitee on its premises he was merely a licensee when he got upon the conveyor and that therefore the only duty it owed him was to refrain from wilful or wanton injury.

■ It is well settled that one may be an invitee upon premises for a specific purpose and yet become a mere licensee with respect to certain parts of the premises, approaches to it, or appliances contained within it, which were not intended for the use of visitors. (*State Comp. Ins. Fund* v. *Allen,* 104 Cal. App. 400 [285 Pac. 1053]; *Powers* v. *Raymond,* 197 Cal. 126 [239 Pac. 1069].)

■ An invitation to use the premises of another is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using them. (*Bush* v. *Weed Lumber Co.,* 63 Cal. App. 426 [218 Pac. 618].) The difference between a licensee and an invitee is very clearly set forth in *Aguilar* v. *Riverdale Co-operative Creamery*

*Assn.*, 104 Cal. App. 263, 266 [285 Pac. 889, 891], wherein the court said:

"Whether a person entering the premises of another bears the legal status of an invitee or of a bare licensee depends upon the nature of the business which brings him on the premises, and before such person can be given the legal standing of an invitee it must appear that he has entered the premises at the express or implied invitation of the owner or occupant thereof. If it be shown that his purpose in so entering was one of common interest or mutual benefit to the owner or occupant and himself, or was in connection with the former's business which was there being carried on, an invitation is implied. But if it be shown that he stood in no contractual relationship with the owner or occupant, and that he was there for purposes purely of his own or of a third party which had no relation whatever to the business of the owner or occupant, and in which the latter had no interest, beneficial or otherwise, he is deemed in law to be a bare licensee." (Citing numerous authorities from this and other states.)

■ In the instant case respondent was on the premises of appellant engaging in work for the mutual benefit of it and himself. There is substantial evidence that in order to accomplish this work it was necessary for respondent to get on top of the conveyor for the purpose of removing the obstructions that prevented the cottonseed from being carried to appellant's mill. This was the usual and customary method used by all of the truckmen in unloading the seed into the conveyor. Respondent had received no notice from appellant that such use of the conveyor was not permitted.

While there was no express invitation upon the part of appellant permitting respondent to so use the conveyor, we are of the opinion that under these circumstances there was an implied invitation to use the conveyor for the aforesaid purposes.

Appellant contends that respondent's injuries were owing to his own negligence. ■ It is a well-settled rule that the owner of the premises must exercise ordinary care to render them reasonably safe to persons whom he induces to come thereon by invitation, express or implied (Thompson on Negligence, p. 146) and appellant owed to respondent, as such invitee, the duty of maintaining the property in a safe con-

dition and exercising reasonable care in protecting him from injury. (*Madigan* v. *O. A. Hale & Co.*, 90 Cal. App. 151 [265 Pac. 574]; *Goldstein* v. *Healy*, 187 Cal. 206 [201 Pac. 462]; *Oles* v. *Kahn Bros.*, 81 Cal. App. 76 [253 Pac. 158].)

■ Appellant admits that the conveyor was unsafe and dangerous to one who attempted to walk along its top, and that this condition was well known to it, but that this dangerous and unsafe condition was obvious and plainly to be seen, and that when respondent attempted to walk upon said conveyor he did so with knowledge of its unsafe condition. Many cases are cited by appellant in support of this contention. Among others is the recent decision of the Supreme Court of this state in *Weddle* v. *Heath*, 211 Cal. 445 [295 Pac. 832, 834], in which the court said, approving the language of *Shanley* v. *American Olive Co.*, 185 Cal. 552, 555 [197 Pac. 793]:

"A person so invited upon the premises may recover from such owner for any injuries received owing to the dangerous condition of the premises known to the owner and not known to the person so invited; but such owner is not bound to keep his premises absolutely safe. (29 Cyc. 453.) The responsibility of such owner for the safety of such person in such a case is not absolute; he is only required to use ordinary care for the safety of the persons he invites to come upon the premises. If there is a danger attending upon such entry, or upon the work which the person invited is to do thereon, and such danger arises from causes or conditions not readily apparent to the eye, it is the duty of the owner to give such person reasonable notice or warning of such danger. But such owner is entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. He is not required to give to the invitee notice or warning of an obvious danger. (29 Cyc. 471, 474; 26 Cyc. 1213.)"

H. O. Douglas, appellant's superintendent, testified that appellant had an employee whose duty it was to clean up and keep the seed out of the way and keep the conveyor in working order. It appears that this employee neglected to perform this duty and left the removal of the clogging seed to the unloading truckmen.

C. D. Zwinge, appellant's assistant superintendent, testified that he had seen some of the truck drivers on top of

the conveyor and warned them off, but there was no evidence that he had ever seen respondent on the conveyor or had given him any warning to stay off of the conveyor. He further testified that no sign was placed near the conveyor warning the public to keep off of it, and he gave as his reason for not placing such a sign upon or near the conveyor that originally the top of the conveyor was open, but that after putting on the iron grates, that is to say, the iron bars four and a fourth inches apart, they considered it perfectly safe. He assisted in putting on these iron bars and was in all ways familiar with the construction of the conveyor.

Respondent testified that when he arrived at the conveyor and was preparing to unload the seed it was getting dark, that there was only one light near the conveyor, and owing to an obstruction between the light and the conveyor a shadow was cast upon that portion of the conveyor next to the truck, that by reason of the darkness and the shadow he could not see very well and in groping his way back to his truck he missed his footing and met with the accident. He further testified that he was not familiar with the construction of the conveyor and did not make any investigation as to whether or not it was dangerous to walk on top of it; in other words, that he was not sufficiently familiar with the construction of the conveyor to know or realize that he was in danger while walking on it.

Upon these facts it was a question for the jury to determine whether or not the respondent was negligent in getting upon and walking along the top of the conveyor. (*Dobbie* v. *Pacific Gas & Elec. Co.*, 95 Cal. App. 781 [273 Pac. 630].)

█ Appellant next contends that respondent's employer, Fry, had a contract, presumably with a cotton-gin operator, to haul cottonseed to appellant's mill and unload it at the conveyor, and that the conveyor was under the constructive control of Fry at the time of the accident. A considerable portion of its brief is devoted to a discussion of this question. We do not see any merit in this contention in its application to the facts in this case. In the well-considered case of *Dobbie* v. *Pacific Gas & Elec. Co., supra,* the court held that the relation of master and servant does not subsist between the owner of the premises and the servants of an independent contractor, and that the obligations of

master are not imposed upon the former, but that the contractor's servants are deemed to be on the premises by the owner's invitation, express or implied; that he therefore owes the same. duty of guarding them against hidden dangers thereon as he would to a guest, customer or other person who came there by his invitation; and that it is his duty to warn them of any danger of which he knows, or as a prudent man ought to know, and of which they are not aware. Many authorities are cited therein in support of the foregoing principles.

■ Appellant points out one instruction given by the court and three instructions on behalf of appellant which were refused by the court, and claims that in giving the one and refusing the three asked by appellant the court erred.

Taken as a whole, the instructions given by the court fully and fairly informed the jury of the law applying to the facts in this case, and covered all matters contained in the refused instructions. ■ Appellant claims that the court erred in overruling its demurrer to the complaint, in that the complaint does not set forth the particular facts constituting the alleged negligence of appellant.

The complaint states that the appellant kept, maintained and operated the said conveyor and said premises in a careless, reckless and negligent manner, and that as a proximate result thereof respondent's two feet and legs became entangled in said conveyor, etc.

In *Bergen* v. *Tulare County Power Co.,* 173 Cal. 709, 715 [161 Pac. 269, 271], the court said:

"It is well settled in California that negligence may be charged in general terms. It is only necessary to plead what was done, and allege that it was negligently done without stating the particular omission which made the act negligent. But it must appear from the allegations that the negligence caused or contributed to the injury. (*Barbieri* v. *Law,* 209 Cal. 429 [287 Pac. 464]; *McKeon* v. *Lissner,* 193 Cal. 297 [223 Pac. 965].)

It appears that this case was fairly tried on its merits and it does not appear that appellant was misled by any alleged defects in the pleadings.

Appellant in its answer did not plead contributory negligence on the part of respondent, but in its opening

brief it cites authorities in support of that defense to the action. ■ If not pleaded as a defense, still if it appears from the evidence of the plaintiff that he was guilty of such negligence, the defense may be availed of though not pleaded. (*Queirolo* v. *Pacific Gas & Elec. Co.,* 114 Cal. App. 610 [300 Pac. 487] ; *Martinelli* v. *Poley,* 210 Cal. 450 [292 Pac. 451].)

■ We are of the opinion that there was substantial evidence that respondent was not guilty of contributory negligence. In order to render him guilty of negligence the danger arising from getting on top of the conveyor must have been obvious and plainly to be seen. Respondent testified that he did not see or realize the danger of so doing, and he is corroborated in this by Zwinge, the assistant superintendent of appellant, who testified that he helped construct the conveyor and was familiar with its construction, and in answer to the question why he had not placed a sign warning people that it was dangerous he answered, "Simply for the reason that the conveyor we installed first, the first conveyor there was open, and after we put grates on it, we considered it perfectly safe." If the employees of appellant who had aided in the construction of the conveyor and were entirely familiar with it considered it wholly safe, it would not be reasonable to conclude that respondent, who had only a slight knowledge of it, could have known the danger he incurred in walking on it.

We are of the opinion that there was substantial evidence supporting the verdict of the jury and therefore that the judgment must be affirmed. Appellant, in his brief, has argued some additional matters, but we deem it unnecessary to lengthen this opinion by discussing them, as they are either herein disposed of or are without merit.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 7, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 6, 1933.