[Civ. No. 2257.   Fourth Appellate District.—June 6, 1939.]

HEROLD SILLS, a Minor, etc., et al., Respondents, v. HENRY FORBES, et al., Appellants.

Charles V. Barfield and John B. Healy, Jr., for Appellants.

Clarence H. Wilson and Roger R. Walch for Respondents.

MARKS, J.—This is an appeal from a judgment in favor of Herold Sills, a minor, against Henry Forbes and E. C. Salyer in the sum of $5,000 for personal injuries suffered in an automobile accident, and in favor of Virgle Sills and J. B. Long, cross-defendants, against Henry Forbes and E. C. Salyer, cross-complainants. When appropriate, we will refer to Herold Sills as the plaintiff and to Henry Forbes and E. C. Salyer as the defendants.

The accident, a head-on collision between two motor vehicles, happened at slightly before 6 o'clock on the morning of October 13, 1936, on a private road about twenty miles southwest of the city of Corcoran in Kings County. The road ran over property belonging to a Mrs. Baldwin and was kept in repair by farmers operating in that district.

Herold Sills was a minor of the age of about seventeen years. He and his brother, Virgle Sills, were employed as irrigators by J. B. Long, a farmer, engaged in farming in that district. They had worked from 6 o'clock in the evening of October 12th, to a short time after 5 o'clock on the morning of October 13, 1936, when they entered Virgle's automobile to return to the J. B. Long camp which was located on or near the private road, and where they were living during their employment. Herold went to sleep immediately after entering the car and did not waken until after the accident.

It is admitted that he was Virgle's guest and that the negligence of Virgle could not be imputed to Herold.

The Sills brothers left their place of employment in Virgle's automobile. Virgle was driving. They were preceded, at a distance of between two hundred fifty and three hundred yards, by a small truck which was being driven by a fellow employee of J. B. Long. The vehicles reached the private road in question here and turned west. This road was covered with fine dust. The dust rose behind the truck in a dense cloud which covered more than the width of the road and extended to the rear of the truck for a considerable distance.

Henry Forbes was driving a truck belonging to E. C. Salyer, his employer, east on the private road at this same time. He was acting within the scope of his employment and was on his employer's business. The two trucks met and passed and Forbes drove into the dust cloud at a speed which he estimated at about twenty miles an hour. He had observed the cloud of dust for some time before he met the truck. After entering the dust cloud he could not see more than about eight feet beyond the hood of his truck so he reduced its speed to about eight miles an hour, intending to stop.

Sills was driving west in this cloud of dust at a speed of about twenty or twenty-five miles an hour. He did not see the Forbes truck approaching until it was about fifteen feet from his car. Both vehicles were straddling the center of the road. The left fronts of the vehicles came into violent contact. Both were demolished and the three men were badly injured. As the jury found that both drivers were negligent we need not consider their injuries. Nor will we concern ourselves with the negligence of Virgle Sills which is admitted.

The following questions necessarily require our consideration on this appeal: (1) Was the road in question a private road, as defined in section 82 of the Vehicle Code, or was it a street or highway, as defined in section 81 of the same code? (2) Were plaintiff and Virgle Sills licensees or invitees in traveling over this road? (3) What was the reciprocal duty owed by each driver to the other, it being admitted that Forbes was an invitee on this road? (4) Was Forbes guilty of any negligence, or was the accident caused solely by the negligence of Virgle Sills? (5) Was an erroneous in-

struction prejudicial? (6) Was a ruling by the trial judge on the admissibility of evidence erroneous and prejudicial?

In considering these questions we will confine ourselves to a summary of only such evidence as tends to support the verdict and judgment and will disregard other evidence which conflicts with it. We will consider these questions in the order stated without restating them.

■ 1. Section 81 of the Vehicle Code, in effect at the time of the accident, provided as follows:

" 'Street' or 'highway' is a way or place of whatever nature open to the use of the public as a matter of right for purposes of vehicular travel."

Section 82 of the same code, in effect at the same time, provided as follows:

" 'Private road or driveway' is a way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other members of the public."

Plaintiff urges that under the evidence the jury was entitled to conclude that the road in question was a highway, as defined in section 81, and not a private road as defined in section 82 of the Vehicle Code.

In considering the definitions of the words "highway" and "private road", as used in these sections, we must bear in mind that when used in the Vehicle Code they are used for the special purposes of that act, and that sections of other codes and the decisions under them relating to the use of the same or similar words can have little bearing on the solution of this problem. (*Scalf* v. *Eicher*, 11 Cal. App. (2d) 44 [53 Pac. (2d) 368].)

The evidence before us shows that the road in question had been open for a number of years; that the land upon which it was located was privately owned and had neither been dedicated to nor accepted for public use; that the owner kept signs posted along its boundaries informing travelers that permission to use it was revocable at any time; that express permission had been given by the owner to Salyer and certain other farmers operating in the district to use the road as long as they kept it in good condition; that this permission, at least by implication and custom, had been extended to the employees of these farmers; that a few days prior to the acci-

dent notice had been given by the owner requiring the repair of the road.

The best description of the road, its use, condition and maintenance contained in the record is found in the testimony of defendant Salyer, from which we quote the following extracts:

"Q. Do you know whether it's a public or a private road? A. It's a private road.  Q. Who maintains the road, do you know, Mr. Salyer?  A. The various farmers down there.  I know I have been helping maintain it ever since we farmed out there, the last six years, six or seven years, and J. D. Long, he has helped maintain it, and I don't know whether Stridde ever did, or not.  I believe Stridde has done some work on it.  Q. It was maintained by private individuals? A. Yes; and Schmeiser, also. . . . Q. Do you know how wide that road is?  A. Eighteen feet.  I watched Morton measure it.  That is, the smooth part of the road.  It was wider than the 18 feet but they use a drag to drag it and it was a little more on the rougher portion, maybe, say, a couple of feet on the south side and north side of the road, there is a ditch bank right along here.  This is just graded up gradual like this, maybe a little more of a grade like that, and of course they drove clear up onto the top of this thing. . . . Q. Well, haven't you been using it during all of this six years you have been farming out there?  A. We have permission to use it, with notice that it is revocable at any time.  Q. What about salesmen and people that have business with the farmers out there?  That road is used by trucks that haul grain and cotton— . . . Q. By oil companies that haul oil and fuel out there to the camps and the ranches, by the various employees of the ranches going back and forth to town; isn't that correct?  A. Yes, they have notices posted on the road, permission revocable at any time, permission to use.  Q. You say they have?  A. Yes.  And it wasn't very long before this accident happened that we had to go and repair the roads, and they told us they was going to cut us off to using it if we didn't repair the road.  Q. They never have cut you off, however; you have used them right along?  A. Well, we was ordered that we couldn't use it unless we repaired the roads. I couldn't say we have been cut off entirely. . . . Mr. Brown: Will you describe it?  A. They are a better picture than what I could describe.  It is a nice smooth road for a dirt road.

. . . Q. Mr. Salyer, you saw the road down there that day? A. I travel it every day, a number of times a day. Q. What condition was it in? A. In good shape. Q. Was it a road with two marks showing one traveled portion? A. Yes. There was two traveled portions of it. Q. The road was used— Withdraw that. Were both sides of the road used, Mr. Salyer, or was just the middle of the road used? A. Both sides. Q. Do you know when the road had been scraped previous to this accident? A. Well, I wouldn't want to place a date, but some few days prior to that. I don't think it had been over, at the longest, a week. From three days to, say, seven or eight days. Q. From three days to a week before the accident? A. Yes. Q. Was the road equally safe on the sides as well as in the middle? A. Yes, you could go 70 miles an hour if you wanted to.''

It is also clear from the evidence that there was considerable traffic on the road, considering its location, so that one using it might reasonably expect to meet other users of the road.

From the foregoing evidence we conclude that the road was not ''open to the use of the public as a matter of right for purposes of vehicular travel'' (sec. 81, Vehicle Code), and was therefore not a public street or highway. There was no *right* vested in the public to use the road. Its use was by permission of the owner and was revocable at any time. This brings the road within the definition of a private road as contained in section 82 of the Vehicle Code.

2. In discussing the question of what constitutes a person an invitee on premises of another, we find in *Madigan* v. *O. A. Hale & Co.*, 90 Cal. App. 151 [265 Pac. 574], the court said:

''In *Benson* v. *Baltimore Traction Co.*, 77 Md. 535 [39 Am. St. Rep. 436, 20 L. R. A. 714, 26 Atl. 973], it is said: 'The distinction between an invitation and a license to go upon the premises of another appears to be that the former is inferred where there is a common interest or mutual advantage, while the latter is inferred only where the object is the mere pleasure or benefit of the person using it.'

''The law of California accepts these principles as operative in this jurisdiction. (19 Cal. Jur., pp. 617–621.)'' (See, also, *Grant* v. *Sunset Telephone etc. Co.*, 7 Cal. App. 267 [94 Pac. 368]; *Gulley* v. *Traders Oil Corp.*, 102 Cal. App.

557 [283 Pac. 97] ; *Buckingham* v. *San Joaquin Cotton Oil Co.*, 128 Cal. App. 94 [16 Pac. (2d) 807] ; *Lawand* v. *California Products Co.*, 9 Cal. App. (2d) 147 [48 Pac. (2d) 979].)

When we measure the facts of this case by the foregoing rule the conclusion follows that Virgle Sills and his brother were on the private road as invitees by the implied invitation of the owner of the property. While a particular benefit did not flow to the property owner from the single trip in question, she received a consideration, that of maintenance of the road, from the neighboring farmers for allowing them and their employees and others to use the road. Part of that consideration had passed to her just before the accident here when the farmers put the road in the excellent condition described by Salyer. There is here the express permission by the owner to the use, the long-continued use and maintenance of the road and the common interest and mutual advantage to the owner and those using the road from which a general invitation to use the road may be implied.

It follows that Forbes and the Sills brothers were using the road as invitees. Neither driver had a superior right over the other to its use and each driver was held to the same degree of care to refrain from injuring the other.

Defendants seek to escape this conclusion by pointing to an answer made by Virgle Sills on cross-examination, to the effect that no one had given him permission to use the private road. This statement clearly refers to lack of permission given to the witness *personally*. When understood in that sense it can hardly create even a conflict with the evidence we have summarized and quoted.

■ 3. Under the facts of this case we are of the opinion that an invitee lawfully using the road stands in the shoes of the owner towards another invitee who is also lawfully using the road. (*Kirkpatrick* v. *Damianakes*, 15 Cal. App. (2d) 446 [59 Pac. (2d) 556].)

In *Henslee* v. *Fox*, 10 Cal. App. (2d) 202 [51 Pac. (2d) 1176], it appears that an accident happened on Berry Street, a privately owned way in San Francisco, which, on sufficient evidence was found to be a private road. The same case was before the court again (*Henslee* v. *Fox*, 25 Cal. App. (2d) 286 [77 Pac. (2d) 307] ), where the court approved the following

instruction defining the duty which one invitee on the road owed another:

" 'However, in either event, the defendants are not absolved from the duty of exercising ordinary care for the safety of others. In determining whether or not ordinary care was exercised, you may ask yourselves this question: "Did the defendant Forrest exercise that degree of care and caution that would have been exercised by an ordinarily careful and prudent person acting in same or similar circumstances?" ' "

The law which is announced in this instruction is equally applicable to a motorist driving on a public or a private road. If used in connection with travel on a public road, it summarizes certain provisions of the Vehicle Code. If used in connection with travel on a private road, it summarizes some of the provisions of section 1714 of the Civil Code.

We have reached the conclusion that under the facts of this case each driver owed the other, and Forbes owed plaintiff, the duty of exercising ordinary care to avoid injury, and that Forbes was liable to plaintiff for damages cause by his negligence.

4. The question of Forbes' negligence needs scant consideration. He knew, or should have known, the private road was frequently used and that he might meet another vehicle in the dust cloud. He drove into this dust cloud, which was so dense that he could not see more than eight feet in front of the radiator of his truck, and continued on his way with his vehicle straddling the center of the road and into the Virgle Sills automobile. The jury found from these facts that he was guilty of negligence. The question of Forbes' negligence was one of fact addressed to the jury. Where, as here, there is evidence supporting the implied finding that a defendant was guilty of negligence that concurred in causing plaintiff's injury we cannot disturb that finding on appeal. (*Marshall* v. *Klatt*, 19 Cal. App. (2d) 110 [64 Pac. (2d) 1105].) Because Virgle Sills was also negligent, and because his negligence was a concurrent cause of the accident, cannot relieve Forbes from the result of his own negligence which was also a concurrent cause of the collision.

5. The trial court instructed the jury that: " . . . This rule allows a person lawfully upon a roadway to assume that motor vehicle drivers will obey and abide by the traffic

laws and regulations." That this instruction was erroneous in several particulars cannot be doubted.

The instructions nowhere set forth any of "the traffic laws and regulations", that a driver must abide by. This rendered the instruction indefinite and confusing. Almost every automobile driver thinks he knows the rules of the road. The instruction permitted the jurors to draw upon their own knowledge, real or supposed, of traffic laws and regulations. It is incumbent upon the trial judge to instruct the jury on the law applicable to a case. He should not permit the jurors to speculate on what the law might be.

If the phrase, "the traffic laws and regulations", referred to the rules of the road laid down in the Vehicle Code, they had no application to the instant case as the accident happened on a private road. (*Gootar* v. *Levin,* 109 Cal. App. 703 [293 Pac. 706].)

While the instruction is erroneous and should not have been given, its prejudicial effect remains for consideration.

The only traffic law or regulation Forbes was accused of violating was failing to drive on his own right-hand half of the road. An instruction must be based upon, and its effect weighed, by the facts of the particular case in which it is given. Under the facts of this case the instruction must be construed as informing the jury that each driver, being lawfully on the road, could assume that the other driver would operate his vehicle on his own right-hand side of it. This omits the element that the driver relying on such an assumption must himself be exercising due care. The omission of this element is unimportant in plaintiff's case because he was asleep and a passenger and could not be charged with contributory negligence. It was not prejudicial to Virgle Sills and Forbes because the jury correctly found both of them negligent and awarded them no damages.

In the United States it has always been customary for drivers to operate their vehicles on the right-hand side of a roadway. Numerous statutes have enacted that universal custom into law. The custom itself has established a standard of due care to which all drivers should be required to conform. This should be true whether they are driving on a public street or highway and are required to drive on its right-hand side by law or are on a private road and are required to drive

on its right-hand side by universal custom. Under these circumstances the instruction, while erroneous, cannot be regarded as prejudicial.

■ It is true that one witness testified that it was customary for vehicles to proceed down the center of this particular road. This testimony is contradicted by that of other witnesses and by photographs of the road at and near the scene of the accident. These pictures show two distinct traveled portions of the roadway separated by a less traveled portion in about its center. The testimony of this one witness, contradicted by other clear and convincing evidence, did not require the jury to conclude that there was an established local custom of driving a vehicle down the center of this particular private road.

■ 6. Defendants complain of a ruling of the trial judge sustaining an objection to a question propounded to one of J. B. Long's witnesses on cross-examination. The question concerned the present residence of the witness. In a proffer of proof counsel for defendants stated they expected to prove that the witness had been recently committed to the state hospital for the insane at Patton, California.

Residence of the witness at Patton, California, would not prove he had been committed to the insane asylum there. Many people live at Patton, California, some at the state hospital, others in the village and its environs, none of whom have been committed to the state institution. His commitment could have been proved by the records of the Superior Court of Kings County in the county clerk's office a few doors from the courtroom where this case was being tried. Contents of court records cannot be proved by parol where they are available to the party seeking to use them as evidence. Defendants made no effort to obtain those records and did not offer them in evidence. Thus they failed to use competent evidence to establish the commitment of the witness, which evidence was at all times available to them.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 3, 1939.