[Civ. No. 9643. First Appellate District, Division One.—January 20, 1936.]

AXEL SKOGLUND, Respondent, v. MOORE DRY-DOCK COMPANY (a Corporation), Appellant.

Bronson, Bronson & Slaven, John H. Painter and Kirke La Shelle, Jr., for Appellant.

Alvin Gerlack for Respondent.

THE COURT.—This is an appeal by the defendant from a judgment entered upon the verdict of a jury awarding plaintiff the sum of $4,000 for personal injuries suffered on the premises of defendant.

A number of points are urged in support of the appeal, namely, that the judgment is not sustained by the evidence but is contrary thereto; that the trial court erred in denying defendant's motions for nonsuit, directed verdict and judgment notwithstanding the verdict, and that the court committed error prejudicial to the defendant in permitting plaintiff to repudiate a stipulation of fact.

The position of appellant on these several points, except the one last mentioned, is based upon the argument that the evidence shows beyond dispute that the plaintiff, in entering and being upon the premises of defendant was a licensee, to whom it owed no duty except to abstain from wilfully or wantonly injuring him; and that even if he should be regarded as an invitee, to whom it would owe the duty of ordinary care for his safety while on that portion of its premises where he had a right to be, the evidence shows that such care was in fact exercised by it, and also shows that the plaintiff himself was guilty of lack of ordinary care for his own safety which proximately contributed to his injury.

■ A general verdict for the plaintiff imports a finding in his favor on all the averments of the complaint material to his recovery (*Price* v. *Bekins Van & S. Co.*, 179 Cal. 326 [176 Pac. 452]), so it is apparent that we have here present implied findings that the plaintiff's injuries, if he be regarded as a licensee, were wilfully or wantonly caused by defendant; or, if as an invitee, that they were the result of defendant's lack of ordinary care, with no contributory negligence on plaintiff's part.

■ In the determination of a motion for nonsuit it is the court's duty to resolve in plaintiff's favor all conflicts of evidence and to give him the benefit of all legitimate inferences therefrom. That being done, if it can then be said that there is in the case no evidence of sufficient substantiality to support a judgment in plaintiff's favor the nonsuit must be granted, otherwise denied. The same rule with respect to the effect to be given the evidence applies in favor of the party against whom they are made in a motion for a directed verdict and a motion for judgment *non obstante veredicto* (*Estate of Caspar*, 172 Cal. 147 [155 Pac. 631]). We will set forth the material evidence as affected by this general rule.

The plaintiff, a man about 52 years of age, is a marine fireman and had followed that occupation for some thirty years, during which time he had on a number of occasions been with his ship in dock and shipyards and knew the general character of operations carried on there. He was so employed as a member of the crew of the steamer "Vanguard", which on Saturday, December 24, 1932, entered the shipyard of the defendant situated on the north side of Oakland estuary, going there for repairs estimated to require about a week's stay. At about 5 o'clock in the evening of said day the crew, including plaintiff, were paid off, and the plaintiff was ordered by the chief engineer to report for duty at 8 o'clock the following Tuesday morning, the two intervening days being holidays. On leaving he mentioned to his chief that he would return on board Monday evening, to which suggestion or request the latter assented. The plaintiff then left the ship and went to San Francisco and there to a lodging house which he frequented during periods of unemployment, leaving on board in his berth his clothes, trunk and belongings. Defendant's shipyard covers an area of forty acres, is surrounded on three sides by a fence, the fourth side being the

waterfront, and contains wharves, docks, drydocks, buildings, shops, heavy machinery and appliances, piles of material, etc., such as are characteristic of a shipyard. The ''Vanguard'' was berthed on the west side of wharf No. 6, and on leaving it on said Saturday evening the plaintiff walked to the exit or entrance gate situated at the northwest corner of the yard. We may here say parenthetically that the appellant strenuously insists that the vessel was berthed on the west side of wharf No. 5; but in the view we take of the case it makes no difference. Referring plaintiff's testimony to a diagram of the shipyard used on the trial and forming part of the record on appeal, the plaintiff on his way from the ship to the gate passed between two buildings—one the yard offices and the other the paint shop, which brought him into an alley running east and west at a point thereon which for the purpose of this opinion we will designate as A; he there turned west and proceeded until he reached a way running northerly and southerly between the plate shop and the storeroom and (without describing further points on the route) he reached the exit and proceeded to San Francisco, where he spent Sunday and Monday, returning in the evening of the latter day and arriving at the shipyard gate at about 7:45. The sky was overcast. At the entrance he was challenged by the gateman, but on stating that he belonged to the ''Vanguard'' he was allowed to pass in. To get to his ship he attempted to retrace his steps taken on his walk to the exit on Saturday evening, but when he arrived at the point which we have designated A on the alley running easterly and westerly, instead of turning south and going between the yard offices and the paint shop he continued along said alley. Reaching its end he took a course southeasterly, which brought him to the head of wharf No. 7. He proceeded down this wharf, and when perhaps halfway down he discovered, apparently for the first time, that he had missed his way. At this time he had walked a distance of about 500 feet from point A. He immediately turned and attempted to retrace his steps. In doing so he did not proceed far enough to reach the alley we have spoken of, but at a point en route he veered east, then southeast, which brought him into a dark area. He was now proceeding in the general direction of his vessel but across lots, so to speak, and between him and his vessel there lay drydock No. 4, into which, stubbing his foot against a loose plank, lying near the

edge of the wharf, he was unfortunately precipitated, thereby receiving the severe injuries to recover damages for which he brought the present action.

■ It is apparent from the foregoing that the plaintiff, either by reason of forgetfulness, carelessness or the insufficient lighting of the direct route from the shipyard entrance to his vessel, inadvertently left that route and wandered into dangerous territory. It is conceded by the appellant that if in going from the gate to his ship plaintiff was an invitee, it was its duty to provide him with a reasonably safe route between those points. It claims that it did so, and introduced evidence to that effect. However, one of the particulars of the charge of negligence against the defendant was that this route was insufficiently lighted; and one of the implied findings of the jury is that the charge of negligence in this respect was sustained. If the record contains evidence which supports this charge, even though reasonable men might differ as to its effect, this implied finding of the jury must stand.

The plaintiff himself gave testimony on this subject. Having testified to the presence of a light immediately south of the general offices near the entrance to the shipyard sufficient to illumine an area in its vicinity, he then testified respecting what has been designated in the record by defendant's counsel as the second leg of the course taken by plaintiff to reach his vessel, and over which he had to walk whether the ship was berthed at wharf No. 5, as contended by defendant, or at wharf No. 6, as insisted by plaintiff. We give the following passage from his testimony on this point:

"Q. (By defendant's counsel) : Now there is a light on the northeast corner of the plate shop shown right up here. Do you see that light there (referring to diagram)? A. Yes. Q. That was lighted that night, wasn't it? A. No, no light there. Q. You are sure that light was not lit? A. Yes. Q. You looked up and saw there was no light there, didn't you? A. No but I could see no light there. Q. Now, what would you say as to there being a light right up directly over the southeast end of the plate shop there? That was lighted that night wasn't it? A. No sir, that wasn't lighted. Q. You are positive of that? A. Yes sir. Q. Did you go down this alley way between the storeroom and the power house and yard offices? Did you take that track down there? . . . A. Yes. Q. You came past the plate shop and past this light

which you say was out? A. Yes. Q. And did you take this track down here? A. Yes. Q. And that was in darkness? A. Yes. Q. That same kind of darkness you described this morning when Mr. Gerlack was examining you? A. Well, you could see the outlines of the buildings.''

And speaking again of the route taken by him from the shipyard entrance to point A he said: ''I could see a little bit in front of me . . . it was not so dark but I could see some''; and in this connection he also stated that the nearest light to point A was near the entrance gate and general office, which, according to the diagram introduced in evidence, was distant about 600 feet with buildings intervening.

Another witness, Bradley, a fellow employee of the plaintiff on board the ''Vanguard'', and who returned to the ship after dark on the same night that the plaintiff met with his mishap but reached it in safety, testified as to the route to be taken: ''It was pretty dark.''

There was, on the other hand, very positive and persuasive testimony introduced by defendant that the route to the vessel, whether it lay at wharf No. 6 or 5, was well lighted; but the rule is too well settled that the jury are the judges of the credibility of the witnesses and of the weight to be given their testimony for this court to say that the jury ought to have reached a different conclusion; and we think it apparent from the recital of plaintiff's testimony just given that it is sufficient to support the implied finding of the jury that the defendant did not observe ordinary care in furnishing to plaintiff in his capacity of invitee a safe route from the entrance to its shipyard to the vessel.

We come to appellant's contention that even if it be conceded that the plaintiff in proceeding from the shipyard entrance to his vessel was an invitee, yet when he wandered from the direct route to his ship into another part of the yard he lost his character of invitee and became merely a licensee, to whom as such no duty was owed but to refrain from wilfully or wantonly injuring him; that the very character of a shipyard, with its wharves, and drydocks, and scattered buildings, heavy machinery, piles of material and the more or less disorderly condition of the premises arising from the nature of the activities there carried on, renders it a dangerous place for a person to be wandering around during the night, and that the qualities of wilfulness or wantonness cannot be at-

tributed to an injury suffered by such a person through tripping over a loose board lying on the ground adjacent to a dock.

This might be conceded to be true if the plaintiff's presence in this area was not due to the negligence of the defendant; but the implied finding of the jury that the plaintiff's presence there arose from the lack of sufficient illumination of his route to his ship, being, as we have seen, sustained by the evidence, this negligence on the part of defendant must be held to be the efficient and proximate cause of plaintiff's injuries, and not the act of accidentally stumbling over the board. Such stumbling with its resultant injury was a peril directly resulting from such negligence, and cannot be regarded as an intervening, independent cause of the injury, although the nearest and most direct in point of time (*Cahill* v. *E. B. etc. Stone Co.*, 167 Cal. 126 [138 Pac. 712]). The elements of wilfulness and wantonness do not therefore enter into the case.

The appellant also points out that if plaintiff's route to his vessel was insufficiently illuminated, this fact was as obvious to the plaintiff as to the defendant, and argues that he was therefore negligent in proceeding, and that such negligence bars his recovery; and it makes a similar contention regarding plaintiff's efforts in the darkness to find his ship when he found that he had strayed from his course.

But to reverse the judgment on that ground this court must hold that the plaintiff in acting as he did was negligent as a matter of law. This, obviously, we cannot do, for we think reasonable men might differ on the question whether a man of the age, condition and experience of the plaintiff should have proceeded as he did or, as suggested by appellant, ought to have returned to the gate-keeper and sought assistance or additional illumination.

This still leaves for consideration the question whether the plaintiff was merely a licensee *ab initio*. It is argued by the appellant that in coming aboard the "Vanguard" on Monday night when he was only required to be at work at 8 o'clock on Tuesday morning he was doing so purely for his own purposes and convenience; that he ceased to be a member of the crew when he was paid off on Saturday afternoon, and that the order received by him from the chief engineer to resume work Tuesday morning was a reemployment,

to take effect at that time; that consequently if for his own convenience or pleasure he returned earlier he was until his duties recommenced but a licensee, to whom the defendant owed no duty of ordinary care.

It is conceded that if a member of the crew at this time he was as to the defendant an invitee (*Bailey* v. *Texas Co.*, 47 Fed. (2d) 153). The contention of appellant as last set forth is, we think, based upon a very narrow and forced view of the situation. The chief engineer, plaintiff's immediate superior, was a witness in the case; and he testified that the plaintiff, though paid off on Saturday evening, was not laid off; that it was the same situation as of a man working on shore who would be paid his wages on Saturday and told to come back on Monday or Tuesday. It is not disputed that he was a member of the crew at the time he was paid off. If such payment terminated his employment he was immediately reemployed, and by accepting the employment he became obligated immediately to report for duty the following Tuesday, and thereby, we think, immediately resumed his former status. His clothes and belongings were on board in his berth and there remained. We think also that even if it could be held that he was not actually a member of the crew until he reported for duty, and the permission given him to come on board on Monday night be deemed a privilege accorded to him, it was one so obviously reasonable and in the interest of the employer that the owner of a shipyard who invites or solicits him to bring his vessel to his establishment for repairs should not be heard to say that a person standing in the relation to such owner as is here shown with regard to the plaintiff is not, in passing between his ship and the yard entrance, an invitee but a mere licensee.

 This leaves for consideration the final point made by the appellant, namely, that the court committed error prejudicial to it in permitting plaintiff to repudiate a stipulation of fact.

On this point the record shows that prior to the trial the deposition of Andrew Proebstel, the chief engineer already referred to, was taken on behalf of the plaintiff. The latter's attorney of record was not able to be present but sent a representative who, however, was not an attorney of record in the case. During the taking of the deposition defendant's attorney requested of said representative a stipulation to the

effect that the "Vanguard" from December 24 to 27, 1932, was berthed on the west side of wharf No. 5, to which request assent was given. During the trial plaintiff's counsel in presenting his case offered said deposition in evidence. He himself read into evidence that part of it covering the direct examination, and the attorney of record for the defendant read into evidence that part covering the cross-examination, which latter part contained the report of the making of the stipulation in the manner stated. Upon such reading of the stipulation plaintiff's counsel made no objection, but a little later put a question to one of his witnesses designed to show that the "Vanguard" at the time in question was berthed at wharf No. 6 and not at No. 5. The defendant objected to this evidence upon the ground that it was contrary to the stipulation, and, upon counsel for plaintiff stating that it was preliminary, he was allowed to introduce the testimony. The defendant then moved to strike it out on the same ground. The motion was denied.

From the foregoing recital of facts it is seen that the stipulation was not in writing filed with the clerk of the court, nor, if regarded as orally made in the presence of the court, was it entered in the minutes, as required by section 283 of the Code of Civil Procedure.

This section of the code was construed by the Supreme Court in *Smith* v. *Whittier*, 95 Cal. 279, 288 [30 Pac. 529], where it is said: "This section does not require a construction that in no circumstances shall an agreement which the attorney may make in behalf of his client be binding unless entered in the minutes of the court or filed with the clerk. . . . If under the terms of a mutual stipulation which was only verbal one party has received the advantage for which he entered into it, or the other party has at his instance given up some right or lost some advantage so that it would be inequitable for him to insist that the stipulation was invalid, he will not be permitted to repudiate the obligation of his own agreement upon the ground that it had not been entered in the minutes of the court."

In the case at bar there appear to be no such circumstances. In the first place it was entered into by an unauthorized person under circumstances from which it may be inferred he knew nothing about the fact stipulated to and was relying upon the representation of the opposite party. The defend-

ant was given ample opportunity to introduce evidence on the point covered by the stipulation after the plaintiff denied its validity, which he did, and this evidence was amply sufficient to prove the fact in question had the jury accepted it. No prejudice was shown, unless the necessity cast upon the defendant to prove the fact covered by the purported stipulation may be so regarded—which we do not think is the case. We think it clear that there was no error in admitting evidence at variance with the purported stipulation. And we have already adverted to the fact that the evidence in the case sustains the implied finding of the jury that the route to the ship's berth was insufficiently lighted, which finding applies as well to wharf No. 5 as to No. 6.

This disposes of the points urged by appellant. It results from what we have said that the judgment should be affirmed, and it is so ordered.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 19, 1936.