[Civ. No. 3473.    Second Appellate District, Division One.—February 15, 1921.]

UNA PRIMMER, a Minor, etc., Respondent, v. C. C. HARRIS OIL COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—COLLAPSE OF OIL STORAGE TANK—PERSONAL INJURIES —LEASED PREMISES—RIGHT OF OCCUPANCY OF LESSOR.—In this action against an oil company for injuries sustained by a minor when its storage tank collapsed and demolished a building in which plaintiff was sleeping, it is held that under the terms of the lease by which the defendant held the property from the mother of the plaintiff the right of the lessor to make such use of the premises as would not interfere with the operation of the oil wells thereon by defendant was not taken away.

[2] ID.—MANAGEMENT OF OIL TANK—DUTY IN MAKING INSPECTION— EVIDENCE.—In such action, an objection to a question as to whether in making inspections of oil tanks where the earth is mixed with oil around its foundations it is necessary to dig under

the earth to ascertain whether water has percolated through the oil and dirt was properly sustained, as calling for the conclusion of the witness.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Cates & Robinson for Appellant.

Peyton H. Moore and H. A. Massey for Respondent.

JAMES, J.—Plaintiff, a minor, by her guardian, prosecuted this action against defendant corporation, claiming damages for personal injuries alleged to have been suffered by reason of negligent act of the defendant. Verdict in her favor was returned by the jury and judgment thereafter entered accordingly. This appeal, taken from the judgment so entered, followed.

At the time of the accident which resulted in the injuries complained of, plaintiff was sleeping in a small house located at the rear of a main dwelling on a lot in the city of Los Angeles. The whole of the ground was not of great extent, being of average city lot dimensions. Upon a portion of the lot were located two oil wells, which were operated by the defendant corporation under a lease from the owner of the lot, Mrs. Cummins, who was the grandmother of the plaintiff. A few feet distant from the small dwelling in which the child was sleeping was an oil storage tank belonging to appellant. This tank was elevated above the surface of the ground about eighteen feet and stood upon timbers which were imbedded in the earth. On the night in question it was discovered that the tank was overflowing and members of the plaintiff's family were awakened. In a very short while, however, the tank collapsed upon its foundations and demolished, in part at least, the building in which the child was sleeping, burying the child under the debris, from which she was extricated with difficulty in a seriously injured condition. There was ample evidence to show that the supporting foundation timbers, under the stilts upon which the tank was standing, were decayed and

in an unstable condition. There seems to be no real dispute as to the jury having had ample evidence of a competent kind to warrant the conclusion that defendant had not exercised ordinary care in protecting persons to whom it owed that duty from the possibility of injury from the collapsing of the tank. We will therefore give no further attention to that feature of the case.

[1] Plaintiff was occupying the house with her mother and as a part of the family of the owner of the lot. The question arises in the case as to what the character of the occupancy was, that is, whether plaintiff and her mother were on the property as of their own right or as mere licensees of defendant corporation. In the latter case it is argued, and we think properly, that the rule of ordinary care which the trial judge imposed upon the defendant by his instructions to the jury would not apply. On the other hand, if it was sufficiently shown that the owner had not, by the leasing of the premises, deprived herself of the right to occupy for dwelling purposes that portion where the rear house was situated, then the instructions of the court were correct and the judgment right, unless there is merit in other questions suggested in the brief of appellant. We think that the trial judge correctly concluded as a matter of law that, under the terms of the lease by which the defendant corporation held the property from Mrs. Cummins, the right of the owner to make such use of the same as would not interfere with the operation of the two oil wells by appellant, was not taken away. The lease itself, which was introduced in evidence, after describing the portion of the premises let, proceeded with this language: "and so much of that part of said lot lying south thereof as shall be necessary for the purpose of operating the two oil wells situated on said lot ninety-six. . . . And it is further understood and agreed that the second party's rights apply only to the operating of the two wells as hereinbefore mentioned (no other well being permitted on said lot No. 96)." The main dwelling-house to which we have referred was mentioned in the lease, but it seems to be conceded that that house was not upon the portion of the lot described in the lease. However, in corroboration of the idea that there was reserved to the owner of the lot all rights of use, except such as might interfere with the practicable operation

of the two wells, C. C. Harris, who had been connected
with the defendant corporation for about eleven years and
up to March of 1914, testified as follows: "All the use we
had of it, any use of the property, was just where the
derricks stood. That was the only use we had for it. We
had a cable crossing from the front of the lot to the rear
of the lot, which was the only obstruction that we placed
on their lot at all outside of the two derricks. With regard
to her use of the remainder, I can't tell you how much of
the lot she used. She had access to use any part of it that
she cared to. She did use any part she wanted. They had
shrubbery there, and I think they used any part of the lot
they saw fit. . . . Whether the back portion of this lot was
used by Mrs. Cummins, and for a chicken-yard, and for the
children to play in, I do not know that positive. I think it
was. I think it was fenced in. . . . We did not go in on the
lot at all. We had a tank there, and there is an alley behind.
We pulled the rods from that alley, and pulled the other rods
from the street. That is the way we operated the property.
There was no occasion to go in except to repair this cable
when it was broken. That rear fence was hers." Not only
would it appear by fair inference from the terms of the
lease that Mrs. Cummins had the right to have and use
the dwelling-house at the rear of the lot, but from Mr.
Harris' testimony it would seem that that construction had
been given to the lease by the parties themselves. The lease
term commenced September, 1903, and continued for five
years. After the expiration date in 1908, the lessees and
their assigns continued to use the premises for the same
purposes and under the same conditions as to rental, etc.,
and this condition obtained up to and at the time of the
accident referred to.

One of the points made by appellant is that the court
erred in not allowing a witness, Snyder, who was an em-
ployee of the defendant, to testify as to whether the com-
pany had given permission to Mrs. Cummins to construct
the small house in which the child was sleeping at the time
she suffered injury. The plaintiff's mother had testified
that she had occupied the rear house for about five years
previous to the accident; hence the house had been there
for that period of time at least. The witness Snyder, to
whom reference has just been made, testified that at the

time of the trial he had been manager of the company for about three years and a half, but did not testify that he had had any connection with the company prior to that time, or any knowledge of conditions as to the construction of the dwelling-house. However, the point of the alleged error is lost as to the ruling first complained of when it is observed from the record that the witness answered fully the first question asked of him before objection was made, and the answer was not stricken out. The second question was as to whether during the preceding three years, which was subsequent to the time that the small house was built, the defendant corporation had rented to plaintiff's parents any portion of the lot. The court's ruling in sustaining an objection to this question coincided with his theory of the case that plaintiff had the right to be in the dwelling-house, which right was derived from the lease conditions themselves. We have already expressed the view that this position of the trial judge was correctly taken.

[2] Error is also assigned because of the ruling of the trial court sustaining an objection to a question which had to do with the matter of care exercised by the defendant in the management of the oil tank. The question was as follows: ''And in making inspections of oil tanks where the earth is mixed with oil around the foundations, is it necessary to dig under the earth to ascertain—is it considered necessary to dig under there to ascertain whether water has percolated through the oil and dirt?'' The objection was that the testimony called for would be incompetent and that it would constitute the conclusion of the witness. We think that the objection was rightly sustained. The witness might properly have been asked as to what could be observed upon the surface of the ground and what could be observed by digging beneath the surface, but whether, as the question required him to say, he considered it necessary to act in a particular way, certainly was open to the objection made, for the answer would be expressive only of the witness' opinion or conclusion.

The complaint of the plaintiff was answered without demurrer and it states the facts both as to the occupancy of the dwelling and the occurrence of the accident in concise and sufficient language.

We have carefully examined the record presented in connection with the points made and the argument of counsel, and no substantial error appears to support the claim for a reversal of the judgment.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.