[Civ. No. 6013. Third Appellate District.—July 13, 1938.]

HOWARD THARP, Appellant, v. SAN JOAQUIN COTTON OIL COMPANY (a Corporation) et al., Respondents.

C. Ray Robinson, James D. Garibaldi and Willard B. Treadwell for Appellant.

Ray W. Hays and Conley, Conley & Conley for Respondents.

THE COURT.—This is an appeal by the plaintiff from a judgment following an order granting the defendants' motion for nonsuit.

It appears that on or about the 24th day of January, 1936, the plaintiff, while in the employ of a brother known as Roy Tharp, was injured at a mill belonging to the defendants. The plaintiff was temporarily working for his brother

driving a truck, hauling cottonseed to a seed-house belonging to the defendants at Chowchilla, in the county of Madera. The plaintiff had worked for his brother about a month and a half before the accident, and had made about thirty trips to the seed-house of the defendants unloading cottonseed. On the day of the accident in question the plaintiff had driven a truck containing a load of cottonseed to the warehouse belonging to the defendants. It appears that the cottonseed would be unloaded from the truck into and upon what is called a conveyor belonging to the defendants. This conveyor was used in transporting the cottonseed from the point of loading to a place where the cottonseed was deposited or stored. At times the conveyor would become overloaded. The conveyor was operated by means of a motor and a belt attachment, and when the conveyor was overloaded the belt would come off. On the day of the accident the plaintiff arrived at the cottonseed unloading side platform, drove the right-hand side of his truck alongside of the conveyor, and proceeded to unload the cottonseed from the truck into and upon the conveyor. After completing the unloading of the truck, Tharp drove his truck westward, and thereafter turned around, and after turning around he came back to a view of the conveyor and noticed that the conveyor had stopped. When he noticed that the conveyor had stopped, he did not know exactly whether a small board which had been taken from the truck had fallen into the conveyor, or whether it was the man that was unloading the truck behind him had clogged the conveyor. For some reason Tharp conceived the idea that it was his duty to help replace the belt which had come off following the clogging of the conveyor. With this in view Tharp walked from where his truck was parked or stopped to the motorhouse, and at that time it appears that a Mr. Britton and Mr. Creager were in the motorhouse. Britton was standing toward the south end of the motorhouse between the conveyor and shaft of the driven pulley. It appears that there were two pulleys connected with the operation of the plant, one a small pulley called the driver pulley, attached to the motor; the other, the driving pulley, a large pulley which operated the conveyor. When Tharp entered the motorhouse, it appears that both Mr. Creager and Mr. Britton were standing with their backs toward him. The testimony of the plaintiff was

to the effect that he asked if they needed any help, to which neither Mr. Britton nor Mr. Creager replied, but that Britton simply smiled. At the time in question Creager was instructing Britton how to put on the belt.

A great deal of the testimony, and a great deal of the briefs are devoted to the question of how properly to readjust the belt after it had come off the pulleys. It would appear therefrom that the proper method of adjusting the belt would be to adjust the belt to the lower part of the larger pulley, and thereafter replace the belt upon the smaller or driving pulley.

As Britton was engaged in attempting to replace the belt on the larger pulley, it appears that the plaintiff picked up the belt and attempted to place the same upon the driving pulley or the motor pulley which was then in motion. The plaintiff states that he did not know whether the motor was idling, or whether the power was turned off, but at about the time he attempted to place the belt upon the driving pulley, Britton by some means attempted to place the belt on the lower part of the larger pulley, causing a belt slap, or some movement which, while the plaintiff had his hands upon the belt adjusting the same on the driver pulley, caught one of his hands between the belt and the pulley, by which he received serious injury.

The claim is made that the plaintiff was injured by reason of the negligent manner in which Creager attempted to adjust the belt on the larger pulley. The testimony in the case shows that neither Britton nor Creager knew that the plaintiff was attempting to adjust the belt on the smaller pulley. It also appears in the record that the motorhouse was some little distance away from the conveyor, and was a part of the premises to which the truck drivers, according to the testimony, had been instructed to stay away by the superintendent of the plant. It does not appear, however, that any such instruction was given to the plaintiff. However, the motorhouse and the unloading platform were separate and distinct. ■ The truck drivers, of course, in delivering cottonseed to the plant belonging to the defendants, were there as invitees, to wit, on a common business purpose connected with, or being transacted between their employers and the defendants.

It appears that the motor and the equipment referred to are enclosed in a small house separate and away from the conveyor. This house is called the motorhouse or power-house. It also appears that there was a switch which controlled the movement of the motor, situate about 45 feet from the motor itself.

While it appears that some of the truck drivers and the plaintiff himself had previously assisted in replacing the belt, or had replaced the belt instead of waiting for the employees of the defendants to replace the same, the evidence shows that that was no part of their business, and that in so far as the superintendent was aware that any of the truckmen had so done, he had given them notice to stay away from the powerhouse, and to leave the motor and the belt alone. No question is made that O. R. Britton was in the employ of defendants at the time of the accident, and it is sought to hold the defendants liable by reason of the alleged negligent manner in which Britton was attempting to adjust the belt on the larger motor.

At the conclusion of the plaintiff's case, as we have stated, the motion of the defendants for nonsuit was granted. In the comments by the trial court granting the motion for nonsuit it appears to be stated that the evidence fails to show any negligence on the part of the employees of the defendants, and that the evidence does not show any negligence on the part of the defendants in its maintenance and operation of the motorhouse, pulleys, etc. It appears also that the court was of the opinion that the plaintiff was guilty of contributory negligence in attempting to adjust the belt on the smaller pulley at a time when neither Creager nor Britton knew that he was attempting to do so. This trial court also held that the plaintiff was a mere licensee and not an invitee, and therefore that the defendants, unless guilty of some wilful neglect, could not be held liable.

In the course of the trial several questions arose as to the admissibility of certain testimony. By reason of the views hereinafter expressed it is unnecessary for us to discuss the alleged errors of the trial court in excluding such testimony, and also the alleged error of the trial court in refusing plaintiff's motion to reopen the case.

In the case of *Buckingham* v. *San Joaquin Cotton Oil Co.*, 128 Cal. App. 94 [16 Pac. (2d) 807], this court had before

it a case involving the question of whether the plaintiff was an invitee or a mere licensee. That case is relied upon by both the plaintiff and the defendants. The facts, however, of the Buckingham case are readily distinguishable from the facts involved in the instant case. In the Buckingham case while the trucks were drawn up on the loading platform alongside of the conveyor, it was the practice of the truck drivers to attempt to dislodge the accumulation of cottonseed which would tend to clog the conveyor. In so doing the truck drivers would step on top of the conveyor. One of the truck drivers in so doing slipped and was injured by the conveyor. The conveyor there was directly connected with the unloading operations and the driver, who was injured in unloading cottonseed at the time of the injury, had stepped upon the conveyor to dislodge the seed which seemed to be clogging the same. It appears that the testimony in the Buckingham case shows that the obstructing seed could be removed by truckmen by means of a fork, while standing on the truck. Others testified that the customary way of removing the cottonseed while unloading was by getting on the conveyor. In the Buckingham case the injury occurred where the truckmen were accustomed and expected to be. In the instant case the plaintiff was injured where he was not accustomed to be, and where he was not expected to be, and where it was not necessary for him to be. In the instant case the plaintiff had completed the unloading of his cottonseed; the conveyor had not stopped while he was unloading, and he had completely finished his business as an invitee upon the premises belonging to the defendants, to wit: the driving upon the platform; the unloading of the cottonseed; and his departure therefrom. In the opinion in the Buckingham case we find the following words which are directly applicable here: ''It is well settled that one may be an invitee upon premises for a specific purpose, and yet become a mere licensee with respect to certain parts of the premises, approaches to it, or appliances contained within it which were not intended for the use of visitors.'' (Citing a number of cases.) The court in the Buckingham case then goes on to draw specifically the line of demarkation between an invitee and a licensée, showing that an invitee is upon the premises upon business connected with his employer and the owner of the premises, while a licensee is

upon the premises of his own volition, and not pertaining to the business between his employer and the owner of the premises.

In the case at bar the evidence shows that the plaintiff was not acting for the mutual benefit of his employer and the defendants, and was engaged upon a mission of his own, without the knowledge of either Creager or Britton as to what he was about to do. At the time in question the plaintiff's employer had nothing whatever to do with the restarting of the machinery contained in the defendants' plant. In other words, whatever he did was purely personal to himself, and was not in furtherance of the interests of his employer. Roy Tharp was the employer of the plaintiff, and so far as the truck load of cottonseed belonging to Roy Tharp was concerned, it had all been delivered at the place, and under the circumstances and conditions provided by the defendants for such delivery. There was no business of the plaintiff or of his employer about to be transacted in which the plaintiff or his employer was interested. The matter of replacing the belt was purely an affair for Creager and Britton, and did not concern either the unloading or the delivery of any cottonseed brought to the premises by the plaintiff. The plaintiff had finished unloading his cotton; he had gone from the premises provided for that work; had turned and started toward home; and then, without any business connected with the premises belonging to the defendants, he went back and entered the powerhouse and attempted to perform a service not expected to be performed by truck drivers, and performed at an instant of time when neither Creager nor Britton were aware of the fact that he was about to perform such service. The testimony shows that Creager, who was directing Britton, never saw Tharp in the powerhouse.

It may be admitted that the trial court was in error in concluding that Britton was not negligent in the manner in which he attempted to place the belt upon the large pulley. That, however, does not charge the defendants with liability. We do not need to enter into a discussion of either of the alleged negligence of Britton or of the alleged negligence of the defendants in not having the belt properly guarded. Nor do we need to enter into a discussion of the alleged errors of the trial court in its exclusion of testimony

proffered by the plaintiff. The fact remains that the circumstances show that the plaintiff in this case was a mere licensee, and the principles enunciated and the cases cited in the Buckingham case, *supra*, showing when one is an invitee and when one is a licensee, we think conclusive of this case and support the order of the trial court in granting a motion for nonsuit on the ground that the plaintiff was a mere licensee, irrespective of whether the court did or did not err in all the other particulars alleged by the appellant.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 12, 1938, and the following opinion then rendered thereon:

THE COURT.—In his petition for rehearing the appellant insists that the trial court erred in refusing his request to open the case after it was submitted, to permit him to prove that it was the custom of truck drivers delivering products to the defendants' warehouse and mill to assist defendants' employees in installing and replacing belts on the pulleys.

We are of the opinion the court did not abuse its discretion in denying the application to open the case for further evidence of an alleged prevailing custom. We are unable to see how such a custom on the part of truck drivers to volunteer their services would inure to the benefit of the appellant. There was evidence in the record that some truck drivers did assist in installing and replacing the belts. That evidence is fully considered in the opinion of this court. Moreover, it is the invariable rule that evidence of a custom which is not so general in its character that it will be presumed to have been known to the parties or of which a court will take judicial knowledge must be pleaded to warrant the acceptance of evidence of such custom. (*Pray* v. *Trower Lumber Co.*, 101 Cal. App. 482, 489 [281 Pac. 1036], 25 Cal. Jur. 422, sec. 8; 17 C. J. 516, sec. 80; 27 R. C. L. 195, sec. 40.) The appellant failed to plead the custom, the proof of which he sought to introduce.

The other issues on appeal are adequately covered by the opinion.

The petition for a rehearing is, therefore, denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 8, 1938.