[L. A. No. 18754. In Bank. Dec. 15, 1943.]

JANICE CRANE, a Minor, etc., et al., Respondents, v. C. S. SMITH, et al., Defendants; C. S. SMITH METROPOLITAN MARKET COMPANY (a Corporation), Appellant.

Russell H. Pray, Samuel P. Block, S. J. Nordorf and William C. Price for Appellant.

Ben C. Cohen and George Cohn for Respondents.

EDMONDS, J.—Janice Crane, a three-year-old child, was awarded damages for injuries received when she placed her finger in a grinder used by C. S. Smith Metropolitan Market Company to prepare coffee for the customers of one of its

stores. The appeal from the judgment presents for decision questions concerning the liability of a merchant for maintaining machinery which may be reached by children with possible injury to them.

The action was brought in the name of the child by Bruce Crane, her father, as guardian *ad litem*. He is also a plaintiff in his individual capacity. C. S. Smith and several persons sued by fictitious names were charged as defendants.

In the first count of the complaint, it is alleged, Janice, a three-year-old girl, was in the Smith market with her mother. Mrs. Crane was purchasing grocery supplies, including some coffee. The defendants "carelessly, recklessly and unlawfully placed and maintained a coffee grinder . . . in one of the aisles frequented by the patrons of [the] . . . market and easily accessible to patrons and to children of tender years, which facts were well known, or should have been known, to defendants." This coffee grinder, when operated, "was particularly attractive to and dangerous to children of tender years"; the defendants knew or should have known this, and the accident would not have occurred if the grinder had not been placed and maintained so as to be easily accessible to young children. Janice, the complaint continues, because of her age, was "wholly unable to appreciate or to guard or to protect herself against the dangerous appliance," and "unwittingly and unknowingly" inserted the index finger of her left hand in the coffee grinder, receiving the injuries which form the basis of her claim for damages. In addition to these allegations, the second count charges the defendants with negligence in failing to place proper safeguards around the coffee grinder to prevent injury to young children who would be attracted to it when in operation, and, according to the third count, they were guilty of negligence in the operation of the coffee mill. The fourth count sets forth Bruce Crane's claim for the amount of medical expenses paid or incurred for his daughter's treatment.

C. S. Smith Metropolitan Market Company filed an answer, reciting that it was sued as John Doe Company. According to the answer it, and not the defendant C. S. Smith, owned and operated the market in which the injury occurred. All of the allegations in the complaint, other than those relating to Janice Crane's presence in the market with her mother, were denied. As affirmative defenses the market company asserts that the injury, if any, was the result of an

unavoidable accident, that a recovery by Janice is barred by her contributory negligence, and that Bruce Crane may not recover by reason of his and his wife's contributory negligence in permitting "a child of tender and immature years to wander about the premises without any proper care or supervision."

According to uncontradicted evidence, it was the custom of patrons, when purchasing coffee in the "self serve" market where the accident occurred, to inform a clerk as to the amount desired. He placed the coffee beans in the machine which was a part of the store's equipment and supervised the grinding of them. This grinder was located on an aisle readily accessible to the public.

Witnesses for the child were called to show the usual manner of placing coffee grinders. These witnesses, testifying from much experience in the sale of such equipment, stated that machines of the type used in the Smith market were ordinarily placed behind the counter; they had never seen a machine of the kind which caused the injury on a store aisle. They described it as of a type in common use 15 to 25 years ago and having no guard to protect one from injury if a finger were inserted in the nozzle. For purposes of safety of children, the modern style of grinder has a guard, such as small wires in the spout. Customarily an unprotected grinder is put behind the counter, or if a small model, upon the back of the check stand.

According to one of these witnesses, the mill was ornamented and painted as an attractive fixture. It had a north and a south hopper for receiving beans, but only the north hopper was used. A spout or nozzle protruded from each hopper and discharged the ground coffee into a canister.

From Mrs. Crane's testimony it appears that on the day of the accident, she asked a clerk to grind one-half pound of coffee. The child was standing at her mother's right, close to the coffee grinder. Suddenly the child rushed to her mother and showed her a lacerated finger. The mother immediately took the child to the automobile in which Mr. Crane was sitting and, in looking at her daughter's finger, noticed "some brown stuff" on it which she testified was ground coffee. Re-entering the store, Mrs. Crane saw blood on the floor under the spout on the south side of the mill. The motor was running when the child left her mother and until she returned exhibiting the injured finger. The canister was pushed to

one side of the spout, leaving the nozzle exposed. Mrs. Crane testified that she did not see the child put her finger in the mill because she was watching the clerk weigh the coffee.

Upon this evidence the court found in accordance with the allegations of the complaint. It specifically found that the coffee grinder, when in operation, was particularly attractive and dangerous to a child of the age of Janice, which fact was well known, or should have been known to the market company and its employees. And Janice, the court found, was too young to appreciate the dangerous character of the mill. As the direct and proximate result of the store's negligence in placing the grinder in the passageway so as to be easily accessible and dangerous to children of tender years, Janice, being too young to comprehend the attendant danger, inserted the index finger of her left hand in a spout of the machine while the mill was being operated by one of its employees in the scope of his employment. The child suffered lacerations, fracture and severe injury to the finger, resulting in the amputation of a portion of the distal phalanx and a consequent permanent disfigurement. The court also found that the market company negligently failed to provide the coffee mill with proper safeguards to protect a young child such as Janice, who would likely be attracted to the grinder when it was in operation.

Other findings are that the market company, through its employees, was negligent in failing to warn Janice of the danger after knowledge of her presence near the machine. In addition, it was negligent in failing to keep the mill and canisters in good condition, and, as a result of this negligence, Janice is entitled to $4,800 as damages for the injuries sustained, and her father has incurred medical expense of $45. Finding the affirmative defenses to be untrue, judgment was ordered accordingly.

Upon appeal, the market company contends that the evidence does not establish its negligence, for at the time of the accident Janice was a mere licensee or trespasser and its sole duty was to refrain from willfully or wantonly injuring her. But even assuming that the child was an invitee to whom was owed the duty of ordinary care, its negligence has not been established. Furthermore, says the appellant, the evidence fails to establish that any alleged negligence upon its part was a proximate cause of injury. Not only does the testimony of Mrs. Crane show that Janice was not

injured by the coffee grinder but, assuming that the child did insert her finger in the mill, that act was an independent intervening cause of the resulting injury. And because the action was dismissed against all of the defendants named in the complaint, it is not a party against whom judgment may be rendered. And finally, it contends, the award of $4,800 is excessive for the injury sustained.

Answering these contentions, the respondents insist that the determination of the question of whether the marketing company was guilty of negligence is entirely one of fact which the court, upon substantial evidence, resolved in their favor. At the time of the accident, so they say, the minor child was an invitee, and, as such, the appellant owed a duty to exercise toward her the care and prudence required of a reasonable person under such circumstances. The care required to be exercised by it was to anticipate that children of immature years might tamper with the coffee mill, and it should have taken steps to safeguard the minor in the manner of the placement and operation of the machine. The finding of the court that the coffee grinder was negligently maintained and equipped is amply supported by the evidence. Since Janice was too young to be guilty of contributory negligence, and as the contributory negligence of a parent is not imputable to an infant suing in its own right, the judgment in her favor must be upheld.

Upon the procedural question, the respondents deny that the action was dismissed as to the appellant. Although section 474 of the Code of Civil Procedure directs that a complaint shall be amended when the identity of one sued by a fictitious name is ascertained, they say that this requirement may be, and here was, waived by the appearance and plea of the appellant. And they maintain that the award of damages, being a determination within the discretion of the trial court, should not be disturbed.

Considering the appellant's assertion that there is no evidence showing injury to Janice by the coffee grinder, it is true that no witness saw the child insert her finger in the spout of the machine. The appellant, in support of its claim, refers the court to certain none-too-clear statements of Mrs. Crane on cross-examination as to the position of the child in respect to the coffee mill at the time of the accident. But the record also discloses testimony that the child was within reach of the coffee grinder when her hand was disengaged from

that of her mother and she made an outcry which was heard by the clerk while the machine was in operation. Furthermore, the canister was ajar and the spout exposed before and after the accident so that the child could easily have inserted a finger in the nozzle. Moreover, blood was found on the floor immediately under the south spout, which was the one nearest to the child. In addition, immediately after the outcry, the child's finger was badly lacerated and had ground coffee upon it. Certainly, considering all of these facts, the finding that Janice's finger was inserted in the machine has substantial support in the evidence.

■ A possessor of land who knows, or reasonably should know, of a natural or artificial condition upon his premises which, he should foresee, exposes his business visitors to an unreasonable risk, and who has no basis for believing that they will discover the condition or realize the risk involved therein, is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm. (*Kataoka* v. *May Dept. Stores Co.*, 60 Cal.App.2d 177, 182 [140 P.2d 467] ; *Koppelman* v. *Ambassador Hotel Co.*, 35 Cal.App. 2d 537, 540 [96 P.2d 196] ; *Tuttle* v. *Crawford*, 8 Cal.2d 126, 130 [63 P.2d 1128] ; 2 Rest., Torts, sec. 343; 45 C. J., Negligence, sec. 237, pp. 826-830.) ■ And where the proprietor invites children upon the premises, he has a duty to keep his property reasonably safe so far as they are concerned. (*Kataoka* v. *May Dept. Stores Co.*, *supra*, at p. 184; *Hillerbrand* v. *May Mercantile Co.*, 141 Mo.App. 122, 131 [121 S.W. 326] ; *Graves* v. *May Dept. Stores Co.* [1941], —— Mo. App. —— [153 S.W.2d 778, 782] ; 45 C. J., Negligence, sec. 248, p. 838.) ■ As children have neither an adult's capacity to appreciate the risk involved in a potentially dangerous natural or artificial condition nor the ability to avoid danger to the same degree as do adults, and all persons dealing with them are chargeable with such knowledge, the possessor of land owes the invited children the duty to exercise a greater degree of care than that which he must exercise for the safety of adults. (*Kataoka* v. *May Dept. Stores Co.*, *supra*, at pp. 182-184; *Harrison* v. *Gamatero*, 52 Cal.App.2d 178, 183, 184 [125 P.2d 904] ; *Hernandez* v. *Murphy*, 46 Cal.App.2d 201, 208 [115 P.2d 565] ; *Brizzolari* v. *Market St. Ry. Co.*, 7 Cal.App. 2d 246, 248 [46 P.2d 783] ; *Shannon* v. *Central-Gaither U. School Dist.*, 133 Cal.App. 124, 129 [23 P.2d 769] ; 45 C. J.

Negligence, sec. 248, p. 838, sec. 78, p. 702.) █ The known characteristics of children, including their childish propensities to intermeddle, must be taken into consideration in determining whether ordinary care for the safety of a child has been exercised under particular circumstances. (*Kataoka* v. *May Dept. Stores Co., supra,* at p. 184; *Hillerbrand* v. *May Mercantile Co., supra,* at pp. 131-133; *Graves* v. *May Dept. Stores Co., supra,* at p. 782; 45 C.J., Negligence, secs. 78, 248.) █ One who invites children upon his premises must take "whatever precautions ordinary care would dictate to protect the invited children from any instrumentality he maintains upon his premises which is likely to attract them and subject them to dangers which a reasonably prudent person would anticipate." (*Kataoka* v. *May Dept. Stores Co., supra,* at p. 185.) █ In order to be an invitee or business visitor, it is not necessary that the visitor should himself be upon the land for the purpose of the possessor's business but it is sufficient that he be on the premises for the convenience or necessity of one who is upon the land for such a purpose. (*Bellon* v. *Silver Gate Theatres, Inc.,* 4 Cal.2d 1 [47 P.2d 462]; *Allred* v. *Orth.* 206 Cal. 494 [274 P. 955]; *Goldstein* v. *Healy,* 187 Cal. 206 [201 P. 462]; *Jacobi* v. *Builders' Realty Co.,* 174 Cal. 708 [164 P. 394]; *Muller* v. *Hale,* 138 Cal. 163 [71 P. 81]; *Hamilton* v. *Union Public Market,* 15 Cal.App.2d 340 [59 P.2d 459]; *Skoglund* v. *Moore Dry-Dock Co.,* 11 Cal.App.2d 287 [53 P.2d 1001]; *Gulley* v. *Traders Oil Corp.,* 102 Cal.App. 557 [283 P. 97]; *Roach* v. *Wells Fargo Bank & Union Trust Co.,* 102 Cal.App. 380 [282 P. 967]; *Spore* v. *Washington,* 96 Cal. App. 345 [274 P. 407]; *Primmer* v. *C. C. Harris Oil Co.,* 51 Cal.App. 401 [196 P. 921]; *Runyon* v. *City of Los Angeles,* 40 Cal.App. 383 [180 P. 837]; 2 Rest., Torts, sec. 332, comment d.) █ Accordingly, a child taken to a store is a business visitor regardless of whether it is necessary for the customer to have the child with her in order to shop. (*Gulf Refining Co.* v. *Moody,* 172 Miss. 377, 387 [160 So. 559, 562]; *Carlisle* v. *J. Weingarten, Inc.,* 137 Tex. 220, 224-226 [152 S.W.2d 1073, 1076]; 2 Rest., Torts, sec. 332, comment d; and see *Primmer* v. *C. C. Harris Oil Co., supra; Runyon* v. *City of Los Angeles, supra,* at p. 392.) Janice, therefore, was a business visitor of the appellant's when she accompanied her mother in the store, and the appellant was under a duty to maintain the premises in a reasonably safe condition so far as she was concerned.

The testimony of the respondents' witnesses that the coffee mill was brightly painted and would attract children when in operation affords ample support for the trial court's finding that it was particularly attractive and dangerous to a child of three. And no basis appears upon which to question the finding that Janice was too young to appreciate the dangerous character of the machine. The record contains substantial evidence that machines were available which had adequate safeguards against childish propensities to meddle with them. In any event, there is evidence that the customary position of unguarded coffee mills is behind the counter and not upon an aisle. Under these circumstances, there was substantial evidence justifying the trial court's finding that the failure of the appellant to place the coffee grinder in a place reasonably inaccessible to immature children, or to warn the child against meddling with the machine, constituted actionable negligence.

These rules do not make the proprietor of a business establishment the insurer of the safety of infant invitees. (See 45 C. J., Negligence, sec. 248, p. 838.) Liability attaches to the act or omission of the land occupier only if his action or failure to act is unreasonable under the particular circumstances. As in all cases where a standard of conduct is involved, the reasonable character of the care depends upon whether the interference with the actor's own affairs is warranted by the other's danger. The broad concept underlying the determination of reasonableness of conduct in tort law is stated as follows: "Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done." (2 Rest., Torts, sec. 291 [1]; see also secs. 292, 293; see *Mastrangelo* v. *West Side U. H. S. Dist.*, 2 Cal.2d 540, 549 [42 P.2d 634]; *Cooley* v. *Public Service Co.*, 90 N.H. 460, 465-467 [10 A.2d 673, 676, 677]; *Vigneault* v. *Dr. Hewson Dental Co.*, 300 Mass. 223, 227, 228 [15 N.E.2d 185, 187 188, 129 A.L.R. 95].) And in balancing the utility of the conduct as against the magnitude of risk involved in it, the extent of the chance that the actor's interest can be adequately advanced or protected by another and less dangerous course of conduct must be considered. (2 Rest., Torts, sec. 292 [c]; *Vigneault* v. *Dr. Hewson Dental Co., supra*, at pp. 227,

228.) If the actor reasonably can accomplish the same result by other conduct which involves less opportunity for harm to others, the risk incurred by the manner of doing business which resulted in injury is clearly unreasonable. (*Vigneault* v. *Dr. Hewson Dental Co., supra,* at pp. 227, 228.) So far as the present action is concerned, no particular interest of the appellant was advanced by maintaining the mill upon the aisle, and the utility of the machine would be as adequate were it to have been placed in the less dangerous position behind the counter. Consequently the risk to intermeddling children outweighs the utility to the proprietor of maintaining the machine upon the aisle, and its conduct in so placing the machine was not that of a reasonably prudent person.

Counsel for the appellant relies upon two decisions from other jurisdictions in which recovery was denied children who suffered injuries to their fingers by inserting them into the spouts of coffee grinders. However, in *Connelly* v. *Carrig,* 244 N.Y. 81 [154 N.E. 829], the child was ten years old. Nothing in the opinion indicates that he was too young to appreciate the risk involved in sticking his finger into the coffee mill. In addition, the New York Court of Appeals emphasized, there was no claim that the appearance of the machine was such as to attract a child of the plaintiff's age nor proof that any usual or customary guards had been omitted. Accordingly, the court concluded, "There was nothing to indicate that . . . [the coffee grinder] was not adequately protected or that any protection was necessary." In the other case, *Holbrook* v. *Aldrich* (1897), 168 Mass 15 [46 N.E. 115, 60 Am.St.Rep. 364, 36 L.R.A. 493], the court affirmed a judgment denying recovery to a child less than seven years of age who lost her fingers when she put her hand up the spout of the coffee mill in an attempt to get some whole kernels. In so ruling, the court said, "As the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it, or hold property owners bound to contemplate the infraction of property rights because the temptation to untrained minds to infringe them might have been foreseen." This statement is contrary to the present great weight of authority, including the decisions of this jurisdiction, insofar as it excuses one by whose acts or omissions a child may be injured, from taking into consideration the known characteristics and propensities of its immature and "untrained" mind and is

squarely inconsistent with the rule announced in *Kataoka* v. *May Dept. Stores Co., supra.* (See cases collected in 45 C.J., Negligence, sec. 78, p. 702, sec. 237, p. 838; see California cases cited in *Kataoka* v. *May Dept. Stores Co., supra,* at p. 183.)

The appellant consistently has maintained, however, that although Janice was an invitee when she accompanied her mother into the store, when she meddled with the coffee mill her status changed to that of a "mere licensee or trespasser," to whom was owed "no duty except to refrain from willful or wanton injury." (*Powers* v. *Raymond,* 197 Cal. 126 [239 P. 1069].) In support of its position, the appellant invokes the rule that one may be an invitee upon particular premises for a specific purpose and yet become a mere licensee with respect to certain parts of the premises or appliances contained within it, which were not intended for the use of the visitor. (*Powers* v. *Raymond, supra,* at p. 131; *Irvine* v. *J. F. Shea Co., Inc.,* 41 Cal.App.2d 458, 459, 460 [107 P.2d 80]; *Koppelman* v. *Ambassador Hotel Co., supra,* at p. 541; *Tharp* v. *San Joaquin Cotton Oil Co.,* 27 Cal.App.2d 554, 559 [81 P.2d 443, 82 P.2d 21]; *Buckingham* v. *San Joaquin Cotton Oil Co.,* 128 Cal.App. 94, 98 [16 P.2d 807]; *State Comp. Ins. Fund* v. *Allen,* 104 Cal.App. 400, 413 [285 P. 1053].)

The rule relied upon by the appellant, however, has no application to the facts of this case. At the time of the injury, the coffee mill was on an aisle in a portion of the store open to business visitors. To say that a three year old girl accompanying her mother was such a visitor as she stood in front of the machine but a trespasser when she followed a childish impulse to put her hand on or in the fascinating red contrivance which made such interesting sounds would be to extend the doctrine of the cases denying compensation to one who has exceeded the scope of his invitation beyond their logical scope. Moreover, such reasoning would nullify the land occupier's duty to keep his premises free of natural or artificial conditions which involve an unreasonable danger to his business visitors when he has reason to believe that they will not realize the risk involved in the condition. Certainly, evidence shown by the present record justifies a finding that the child's act was one which a reasonably prudent person should have anticipated and guarded against.

In repeatedly asserting that the judgment may not be sustained upon the theory of attractive nuisance, the appel-

lant relies upon a statement made by the respondents' counsel at the commencement of the trial. But in stating to the court that recovery is not sought under the doctrine of attractive nuisance but upon the ground that the child was an invitee, lawfully upon the premises, and not a trespasser such as a plaintiff in a turntable case, counsel took a legally sound position. Janice, at the time of the injury, was in the market as a business visitor, and consequently "there is no need to invoke a rule whose purpose is merely to relax some of the rigors of the ancient rule of non-liability to trespassers." (*Kataoka* v. *May Dept. Stores Co., supra,* at p. 185.)

The appellant claims, however, that the independent intervening act of Janice in inserting her finger into the coffee grinder was the proximate cause of her injury. But, according to the trial court's finding, the appellant should reasonably have anticipated that an immature child who was unable to appreciate the danger might be injured by inserting its finger in the machine. The childish propensity to intermeddle was the characteristic which the appellant should have taken reasonable precautions to guard against. (*Kataoka* v. *May Dept. Stores Co., supra; Hillerbrand* v. *May Mercantile Co., supra; Graves* v. *May Dept. Stores Co., supra;* 45 C.J., Negligence, sec. 248, p. 838, sec. 78, p. 702.)

The appellant also contends that, when a child is accompanied by a parent and is in the latter's custody and control, the duty to keep the child from harm is upon the parent and may not be shifted to the storekeeper. It is true that the negligence of Mrs. Crane, if any, in caring for Janice is imputable to the father and is a defense to his action in behalf of the community to recover for injuries to which such negligence contributed. (*Kataoka* v. *May Dept. Stores Co., supra,* at p. 189; *Dull* v. *Atchison T. & S. F. Ry. Co.,* 27 Cal. App.2d 473, 479 [81 P.2d 158].) Any want of due care upon the part of a parent, however, does not excuse the negligence of the proprietor in failing to take proper precautions for the safety of children whom he has expressly or impliedly invited upon the premises, so far as the children are concerned, and therefore would not bar the minor plaintiff's action for its own injuries. (*Zarzana* v. *Neve Drug Co.,* 180 Cal. 32, 37 [179 P. 203, 15 A.L.R. 401]; *Kataoka* v. *May Dept. Stores Co., supra,* at p. 188.) And since Janice was too young to be guilty of contributory negligence, the appellant's liability to her is established. (*Gonzales* v. *Davis,* 197 Cal. 256

[240 P. 16]; *Hillerbrand* v. *May Mercantile Co., supra,* pp. 132, 133.)

Even with respect to the respondent Bruce Crane's action, it may not be said that, as a matter of law, Mrs. Crane was guilty of negligence contributing to the injury to Janice. Mrs. Crane did not see Janice put her finger in the coffee mill; she was watching the clerk weigh her purchase. There is nothing to show that she knew, or had any reason to believe, that the machine would not be adequately equipped for the protection of children. And the question of her negligence was one for the trier of fact, who decided it in her favor. (*Kataoka* v. *May Dept. Stores Co., supra,* at p. 189.)

The appellant's claim that the amount of damages awarded Janice is excessive, concerns an issue which is primarily factual in nature and is not therefore a matter which can be decided upon the basis of the awards made in other cases. Although $4,800 for the loss of a portion of the end joint of an index finger may seem quite large, damages are not excessive as a matter of law because a lesser amount has been deemed adequate compensation for a similar injury. Considering the effect which such a physical defect may have upon the child's mental state as well as her future choice of employment, the award does not warrant the conclusion that it was the result of passion, prejudice or corruption; it is therefore beyond the reach of an appellate court. (*Corvello* v. *Baumsteiger,* 115 Cal.App. 194, 200 [1 P.2d 484].)

Also, the fact that the complaint was not amended in conformity with section 474 of the Code of Civil Procedure, to designate the market company as a defendant, does not entitle it to a reversal. At the conclusion of the plaintiffs' presentation of their case, the market company's counsel moved "for a dismissal of the fictitious defendants and [the] specifically mentioned defendant, C. S. Smith." This motion was granted. He then argued a motion for nonsuit as to C. S. Smith Metropolitan Market Company on the ground of insufficiency of the evidence, which motion was denied. The market company subsequently presented its defense.

Under these circumstances, it clearly appears that there was no intention on the part of the appellant, the respondents, or the court to dismiss the action as to the appellant. Obviously, if the contrary were true, the appellant would not have continued with the presentation of its motion for nonsuit and its defense to the action. Where by its voluntary

appearance, the appellant has invoked the judgment of the court, it may not for the first time complain upon appeal of the respondents' failure to amend their complaint in accordance with the provisions of section 474, *supra.* (See *Bayle-Lacoste & Co.* v. *Superior Court,* 46 Cal.App.2d 636, 644 [116 P.2d 458]; *City of Santa Barbara* v. *Eldred,* 95 Cal. 378, 382 [30 P. 562].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied January 13, 1944.