[Civ. No. 6628.   Fourth Dist.   Mar. 7, 1962.]

KENNETH O. FACE, Plaintiff and Appellant, v. S. JAY SARKIS et al., Defendants and Respondents.

46

Swing & Swing and John Fisher for Plaintiff and Appellant.

Ives, Kirwan & Dibble and Eugene S. Ives for Defendants and Respondents.

GRIFFIN, P. J.—Plaintiff-appellant Kenneth O. Face obtained a jury verdict awarding him $12,500 for injuries claimed to have been received by reason of the negligence of defendants-respondents, husband and wife. The trial court granted the judgment for defendants notwithstanding the verdict. Plaintiff appealed from the judgment.

It is urged by defendants, in support of the judgment: (1) that the complaint did not state a cause of action, since the condition was obvious; (2) that there was no duty owing from the defendants to the plaintiff, since the condition was obvious; and (3) that the plaintiff was contributorily negligent, since the condition was obvious.

The complaint, in one cause of action, alleges that on January 16, 1957, at approximately 3:30 p. m., plaintiff was

engaged in the delivery of propane gas to the defendants; that he was proceeding in a southerly direction along Tamarack Road; that his truck ran into a washed-out portion of the road, proximately causing physical injuries to him; that defendants knew, or in the exercise of ordinary care should have known, of the washed-out portion of the road, and failed to use ordinary care to repair the road or to warn of the washed-out condition. In a second cause of action, it is alleged, in addition, that for many years prior to the happening of the accident the defendants were lessees of the real property on which Tamarack Road was located and that the defendants were entitled to the possession and control of the real property which the road traversed.

Defendants, by answer, denied generally these allegations and alleged that the complaint did not state facts sufficient to constitute a cause of action. They also alleged contributory negligence on the part of the plaintiff. A motion for a judgment on the pleadings, and for a directed verdict in favor of the defendants, was made on these grounds and denied.

▮ The general rule in reference to motions for judgment notwithstanding the verdict is stated in *Brandenburg* v. *Pacific Gas & Elec. Co.*, 28 Cal.2d 282, 284 [169 P.2d 909]:

"A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied." [Citing cases.]

The parties concede this general rule, but plaintiff argues that the allegations of the complaint were adequate to show a cause of action and that there was sufficient evidence to show negligence and that no contributory negligence as a matter of law was established. He relies on such authority as *Powell* v. *Vracin*, 150 Cal.App.2d 454 [310 P.2d 27]; *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 233 [282 P.2d 69]; *Crane* v. *Smith*, 23 Cal.2d 288, 296 [144 P.2d 356]; *Florez* v. *Groom Development Co.*, 53 Cal.2d 347, 360 [348 P.2d 200]; *Sykes* v. *City of Los Angeles*, 110 Cal.App.2d 57, 60 [241 P.2d 1004]; *Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826].

While the reasons for the court's ruling are not necessarily binding on this court (*Yarrow* v. *State of California*, 53 Cal.2d

427, 438 [2 Cal.Rptr. 137, 348 P.2d 687]), the minute order granting the motion recites: ". . . the evidence shows as a matter of law that the defect in the road was an obvious one and the failure of the Plaintiff to see it constituted contributory negligence."

FACTS

Plaintiff testified generally that he had lived at Big Bear Lake for four and one-half years; that he was a truck-driver, delivering butane and propane gas to various customers on the regular route; that he was driving a cab-over-engine type of Ford truck with another employee on the day of his injuries; that a private dirt road (Tamarack Road) runs off of Highway 138 to the Sarkis place, a distance of about one-eighth of a mile, and is the only means of access thereto; that he was traveling about 5 miles per hour; that a particularly heavy rainstorm had occurred two to four days before the accident; that apparently a culvert had become clogged and water overflowed the roadway, causing three distinct ruts across it within a distance of 4 to 5 feet, and that each rut was apparently 8 inches wide and 6 inches in depth and they were banked up and down rather than rounded. Plaintiff said that he did not see and was unaware of any washed-out area or ruts in the road as he approached them. The road was fairly level at that point and he was traveling in second gear. It was a dry clear day. Plaintiff did not notice any debris on the road, but he later noticed the ruts were about one-half full of leaves, twigs and washed-up debris. He testified that, when approaching the ruts, he was observing the roadway and saw nothing unusual, but when about 10 feet from them, traveling at about 5 miles per hour, he suddenly noticed them and applied his brakes but not in time and the front wheels of his truck dropped into them, causing considerable shock and pain to him and his fellow employee; that he found that the clutch pedal was then loose and he could not put it into gear again; that after making the repair he pulled the truck slowly out of the ruts and drove to defendants' home without further observation of the ruts.

Defendant S. Jay Sarkis, called under Code of Civil Procedure, section 2055, testified that he and his wife, for some years, ran a summer camp for girls; that at the time of the accident they did not own the property between the highway and their house, but that defendants did own the property where their house was located; that they had leased the property where Tamarack Road then existed and now exists;

that at the time of the accident Mr. Sarkis took care of maintenance of the road, which maintenance consisted of pulling a drag by a jeep; that there was no maintenance done on the road from October until the time of the accident; that he had purchased gas for his use from this service for years; that he and his wife had been away for two weeks prior to January 16 and that he returned home on that day about 12 noon and drove an empty Chevrolet ½-ton pick-up truck over the road at about 1 to 2 miles per hour; that he did observe the ruts, described as washed-out portions of the road, as he approached them but did not inspect them; that while Face was crossing the ruts, he (Sarkis) heard some noise in that vicinity, went there and observed the stopped truck. He described the ruts as approximately 8 inches wide and 6 inches deep and more or less square-sided, and said that they ran completely across the road and that leaves and debris were in the general vicinity of the ruts.

Plaintiff's fellow employee corroborated plaintiff's testimony and said that he did not definitely recall whether he saw the ruts any time before the truck struck them; that he was generally looking in that area but the first time he saw them was when Face first applied his brakes (within 3 to 5 feet of them); that his head struck the top of the cab; that the roadway was dirt and brown in color and the color of the ruts did not vary from the rest of the road.

Defendant Sarkis testified that, from the time he got home that day until he heard plaintiff's truck, he was busy inspecting his house and preparing it for occupancy; that he did not operate his business during the winter time and during the three-hour period he had not made any repairs on the washed-out section of the road and posted no warning sign, but he did partial repair work after the accident with a shovel; that he had a road-grader on the property which he primarily used to maintain another road, but he did use a drag on this road. He said he talked to Face at the scene and plaintiff told him that he had ''banged his head on the roof of the cab.'' The left front spring on plaintiff's truck was broken. Medical testimony showed a severe sprain to plaintiff as a result of a reversal of the normal lordotic curve of the neck, causing muscle spasm. Plaintiff wore a brace to relieve pain at the base of the neck, which was localized to about the fifth or sixth cervical area. Daily cervical traction was required. The doctor indicated that this should be continued for 9 to 12 months.

## COMPLAINT

Defendants claim that the complaint was defective because it did not allege that defendants caused said wash-out by any defective maintenance or construction of the road, and that plaintiff failed to allege any facts which would excuse plaintiff from having observed the ruts or why the condition described was not open and obvious or why defendants had any superior way of knowing of said condition compared to that of plaintiff.

In *Shanley* v. *American Olive Co.*, 185 Cal. 552 [197 P. 793], relied upon by defendants, the condition there described was much different from the conditions here related. So was *Royal Ins. Co.* v. *Mazzei*, 50 Cal.App.2d 549 [123 P.2d 586]. The complaint, when considered as a whole, did sufficiently allege that plaintiff was a business invitee upon the premises leased by defendants; that defendants knew of the washed-out condition of the road and failed to repair it or give warning of its existence; that defendants maintained and repaired this road; and that a portion of the road was washed out by rain. There was a sufficient description of the ruts.

*Austin* v. *Riverside Portland Cement Co., supra,* 44 Cal.2d 225, 233, sufficiently describes generally the duty of an owner of property towards his business invitee. ██ ██ It states: "Generally, the owner of property '. . . is under a duty to keep in safe condition all portions of premises over which he has control' (*Sexton* v. *Brooks*, 39 Cal.2d 153, 156 [245 P.2d 496]) and in more detail: 'A possessor of land who knows, or reasonably should know, of a natural or artificial condition upon his premises which, he should foresee, exposes his business visitors to an unreasonable risk, and who has no basis for believing that they will discover the condition or realize the risk involved therein, is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm.' (*Crane* v. *Smith*, 23 Cal.2d 288, 296 [144 P.2d 356]; see also Prosser on Torts, pp. 642 et seq.)''

██ While the complaint could have been more specific in reference to objections made, we believe it did state a cause of action. There is no question of the sufficiency of the evidence to show knowledge on the part of defendant S. Jay Sarkis that a dangerous and defective condition did exist some three or four hours before the time of the accident, since Sarkis traversed the ruts himself. There is also a showing that during that period Sarkis might well have known that busi-

ness invitees would be traveling that road and that the washed-out portion might well constitute a dangerous hazard. There is also sufficient evidence to indicate that defendant failed, during that period, to repair the ruts or warn of their existence. The injury to plaintiff was not caused by the truck being thrown out of control and striking some object, but it was caused by the impact of the truck on and into the ruts described. Mr. Sarkis heard the noise of the impact for a distance of about 500 to 600 feet. After this accident occurred, defendant took the precaution to insure that other persons would not be so injured. From this evidence, the jury could reasonably believe that defendant Sarkis' failure to take the necessary steps to repair the road, or to warn of its condition, was negligence.

## Contributory Negligence

The claim that the condition was obvious to plaintiff and that he was therefore guilty of contributory negligence as a matter of law appears to be a factual question. Photographs were received in evidence showing the nature of the surface of the road some time after the accident. They also showed the various large trees and reflected shadows across the road. Defendant Sarkis testified that when he drove over the road a few hours before the condition of it was obvious to him. Plaintiff's testimony was that from his position on the road just prior to the accident, he was observing the roadway and saw nothing unusual that would or did attract his attention to the ruts or the condition prevailing at the time; that the road was fairly level and the color of the road was uniformly the same; and that the ruts were half filled with debris. This testimony was corroborated, to some degree, by his fellow employee. This also appears to be a factual question for the jury to determine. (*Blumberg* v. *M. & T. Inc.,* 34 Cal.2d 226, 230 [209 P.2d 1] ; *Florez* v. *Groom Development Co., supra,* 53 Cal.2d 347, 360; *Peters* v. *City & County of San Francisco,* 41 Cal.2d 419, 425 [260 P.2d 55] ; *Powell* v. *Vracin, supra,* 150 Cal.App.2d 454; *Anthony* v. *Hobbie, supra,* 25 Cal.2d 814, 818.)

At the close of the evidence, defendants made a motion for judgment notwithstanding the verdict, without specifying that they reserved their right to move for a new trial. No motion for a new trial was made or passed upon by the trial court. Apparently the judgment on the verdict of the jury was never entered.

Judgment notwithstanding the verdict of the jury reversed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied April 3, 1962, and respondents' petition for a hearing by the Supreme Court was denied May 2, 1962.